**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEFFREY STEIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:13-cv-00571 (TSC) |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ADDRESSING
COUNTS IV, V, AND VI OF PLAINTIFF'S COMPLAINT**

Plaintiff Jeffrey Stein ("Stein") commenced this litigation pursuant to the Freedom of

Information Act ("FOIA") to, among other things, obtain copies of Department of Justice

("DOJ") Executive Office of United States Attorneys ("EOUSA") reference and training

materials about FOIA and Federal Bureau of Investigation ("FBI") records about Christopher

Hitchens ("Hitchens"), a noted British journalist, and Gwenyth Todd ("Todd"), a former high-

ranking government whistleblower who was forced out of government service and subsequently

investigated and harassed by FBI.[1]   After misleading Stein and the Court about its processing of

these requests, EOUSA and FBI now seek the Court's endorsement of their behavior.  The Court

should decline the agencies' invitation.

---

[1] For ease of reading, EOUSA or FBI will be treated herein as the "defendant" where
appropriate, even though DOJ is the proper party defendant.

## SCOPE OF OPPOSITION

As an initial matter, in the interest of judicial economy, Stein has elected to limit his FBI withholding challenges to only one claimed exemption—Exemption (b)(7)(D)—and the Court should accordingly exclude any other FBI withholdings from its consideration.  Stein only makes this election because he is not particularly interested in the other information, not because he concedes the validity of its withholding.  This case warrants a departure from the normal rule that motions for summary judgment should be ruled on in their entirety for two simple reasons: (1) Stein was never given a chance to stipulate before briefing to any withholdings in Count 5 because the documents were not released before the Government filed its Motion (*see* 4th Hardy Decl., Dkt. #32-1, ¶ 13 ("The FBI is releasing these records to plaintiff in conjunction with the filing of its motion for summary judgment in this matter.") (filed July 31, 2014)); and (2) Stein informed FBI that he was not interested in any records predating 2006 regarding Count 6 two weeks before FBI ignored his clear instructions and released a file from 1997 (*see* Email from McClanahan to Whitaker of 1/31/14, Dkt. #18-6 ("You may tell the FBI that we are not interested in any records about Todd from before 2006.") (filed Mar. 31, 2014).)

Similarly, Stein is not challenging the adequacy of FBI's search for Count 5, its inability to locate a missing file (4th Hardy Decl. at 13 n.6), or its determination not to release a record it deemed "illegible" (*id.*).  Stein reserves his right to challenge the adequacy of FBI's search and any future withholdings for Count 6 if the Court determines that he is entitled to a fee waiver.

## FACTUAL BACKGROUND

In the interest of space, Stein will not restate the facts in Defendant's brief, but he will supplement them as necessary.

2

*Count 4: EOUSA*

EOUSA noticeably omits three key facts from its filings.  First, it completely omits any mention of the administrative appeal filed on 10 November 2011, which the Office of Information Policy ("OIP") remanded to EOUSA for further processing on 5 July 2012. (Compl., Dkt. #1, ¶¶ 40-41 (filed Apr. 26, 2013).)  Neither the Government's brief (Def.'s Mem. P. & A. Supp. Mot. Summ. J. on Counts IV-VI & Mot. Dismiss Count VI, Dkt. #36-1 (filed Aug. 26, 2014) [hereinafter DOJ's Mem.]), nor the sworn declaration of EOUSA's witness David Luczynski (Luczynski Decl., Dkt. #32-2 (filed July 31, 2014)), nor even its Statement of Material Facts Not in Dispute (Statement of Mat. Facts Not in Dispute, Dkt. #32-3 (filed July 31, 2014)) makes a single mention of the existence of this appeal, which is quite telling, since OIP—DOJ's own administrative appeal authority—was not convinced that EOUSA had performed an adequate search and released all non-exempt material.  *See* Letter from McLeod to McClanahan of 7/5/12, attached as Ex. A.  Instead, EOUSA seeks to gloss over that fact, likely because it casts significant doubt on its conclusory assertions to the contrary.

Secondly, EOUSA carefully makes no mention of the fact that, between roughly August 2013 and July 2014, its counsel repeatedly informed the undersigned that hundreds or thousands of pages were at issue, asking him to limit the scope of the request.  (*See* 2d McClanahan Decl. ¶ 5, attached as Ex. B.)  When the parties informed the Court that they "[we]re attempting to limit the scope of the request" (Joint Stat. Rpt. & Req. for Bifurcated Briefing, Dkt. #9, at 1 (filed Aug. 27, 2013) [hereinafter JSR]), "wish[ed] to have time [to] narrow the issues" (Consent Mot. to Extend Due Date for Dispositive Motions, Dkt. #12, at 2 (Jan. 7, 2014)), "w[ould] continue to attempt to narrow Plaintiff's FOIA request to EOUSA" (Consent Mot. to Extend Due Date for Dispositive Motions, Dkt. #13, at 2 (Feb. 7, 2014)), and "continue[d] to consult about the records

3

sought by Plaintiff from the EOUSA" (Consent Mot. to Extend, Dkt. #28, at 1 (filed May 19, 2014)), they were referring to these discussions, in which it was never revealed to the undersigned that EOUSA would not process any pages besides the thirty-eight it initially denied. (2d McClanahan Decl. ¶¶ 4-7.)

Lastly, EOUSA neglects to mention that, on 13 September 2013, it provided, in its own words, "a list of potentially responsive documents" (JSR at 1), which Ms. Whitaker described as "the FOIA topic page from the USA Book." Email from Whitaker to McClanahan of 9/13/13 (referring to Ex. D to the Luczynski Declaration), attached as Ex. C. Instead, EOUSA refers to this document as "the list of topics on the USA Book FOIA Topic page" (Luczynski Decl. ¶ 10), "this lists of 'Links' on the USA Book FOIA Topic Page" (*id.* ¶ 11), "the list of related Links" (*id.* ¶ 18), and "links [which] were not part of the 'list of FOIA topics'" (*id.*) In contrast, EOUSA refers to the thirty-eight pages as "the FOIA portion of the USABook" (*id.* ¶ 7) and "the Chapters relevant to the requests in the FOIA portion of the USABook" (*id.* ¶ 8), even though its counsel admitted that the two released pages were "the FOIA topic page from the USA Book" (Ex. C), with all that that definition entails. (*See* Luczynski Decl. ¶ 16 (defining "Topic Pages" and "Chapters" as the relevant unit of the USABook "bearing the name of a legal topic").)

### *Count 6: FBI*

As EOUSA did with its misleading representation to Stein and the Court that it would be processing significantly more records than it did, FBI also did to both a lesser and greater degree. FBI's misleading actions, noticeably absent from its factual summary, were less egregious than EOUSA's in that it only implied for *four* months that it was processing a voluminous number of records so that it could postpone briefing the matter. (*See* JSR at 2 (stating in August 2013 that "as there are potentially 50,000 records responsive to Plaintiff's FOIA request, the FBI maintains

that at least four years will be required to complete production"); 4th Hardy Decl. ¶ 17 (FBI advised Stein in November 2013 that it would not be processing the vast majority of responsive records for fee reasons).)  However, FBI's actions are even *worse* than EOUSA's when one considers that it had allegedly been diligently processing the FOIA request for *eighteen months* before it made the fee waiver determination, and yet after all that time it had "not process[ed] any records beyond the [174] pages." (*See* 4th Hardy Decl. ¶ 18.)  FBI gives no reason for why it waited eighteen months to make a determination regarding Stein and Todd's fee waiver request. Similarly, FBI provides no answer to the more telling question: if it identified the potentially responsive records in August 2013, what it was doing with them between then and November 2013, if not processing them?  And why did it still take three more months for it to release the 174 pages it *did* release?  (*See* DOJ's Mem. at 6 (FBI did not "beg[i]n processing" request until *after* fee waiver determination was made).)

In a similar vein, FBI pointedly remarks that "plaintiff was advised that he could consider reducing the scope of his request to accelerate the processing and potentially reduce fees associated with his request" (4th Hardy Decl. ¶ 17; DOJ's Mem. at 6), but it then fails to inform the Court that Stein *did* exactly that, severely limiting the scope of the request to only records created since 2006.  Email from McClanahan to Whitaker of 1/31/14, Dkt. #18-6.  Moreover, it does not inform the Court that even after Stein so restricted the scope of the request, FBI refused to reduce its fee assessment.  Most notably, it does not inform the Court that two weeks after Stein excluded pre-2006 records from the request, FBI released 147 pages from a file created *in*

*1997* and refused to process any more pages, even though the pages it released were explicitly beyond the scope of the request.  (McClanahan Decl., Dkt. #18-8, ¶ 5 (filed Mar. 31, 2014).)[2]

## STANDARD OF REVIEW

Stein largely accepts DOJ's recitation of the standard of review regarding summary judgment in FOIA cases.  (DOJ's Mem. at 8.)  However, DOJ leans too much on the presumption of good faith, implying through the creative use of an ellipsis that factual assertions in its declarations should be accepted as true unless Stein submits documentary evidence of bad faith.  (*See id.* (omitting "in the record") (quoting *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).)  The full statement additionally encompasses situations in which the moving party's declarations are facially inadequate or internally contradictory, as is the case here.  In those cases, the Court should not award summary judgment even in the absence of additional evidence, because the moving party has not met its burden of proof.

*Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), sets the standard for a facially adequate declaration which can be enough to suffice in the absence of contrary declarations or documentary evidence:

> [I]n the absence of countervailing evidence *or apparent inconsistency of proof*, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.  In considering a challenge to an agency's retrieval procedures, a reviewing court must thus determine whether *the materials submitted by the agency* satisfactorily demonstrate the adequacy of the search

---

[2] As an aside, FBI oddly harps on the fact that FBI advised Stein that he could file an administrative appeal with OIP of its fee waiver determination (DOJ's Mem. at 6-7), despite the well-established fact that, since the determination was made after the commencement of this litigation, an administrative appeal is neither required nor appropriate.  *See Lewis v. DOJ*, 2010 WL 3271283, at *6 (D.D.C. Aug. 9, 2010) (finding agency's failure in providing substantive response until after plaintiff filed lawsuit made it "not reasonable to expect plaintiff to exhaust his administrative remedies by filing an appeal . . . and the law does not require him to do so").

conducted. *Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate.*

684 F.2d at 127 (emphasis added).

With this in mind, one particular aspect deserves amplification in this case. With respect to the burden facing an agency to demonstrate that information is exempt, "An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm. It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977). "An affidavit that contains merely a 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993) (quoting *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987)). "[T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (footnote omitted). "The [D.C.] Circuit, though expressly disclaiming any attempt to provide 'an encompassing definition of *conclusory assertions*,' noted that 'it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label *conclusory* is surely apt.'" *Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 (D.D.C. 2010) (quoting *Senate of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987)).

Stein admits, however, to confusion regarding FBI's implication that part of Count 6 can be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, as all FBI does is cite the standard of review and never mention it again. To the contrary, a fee waiver determination is

adjudicated using a modified summary judgment standard.  "Documents shall be furnished without any charge or at a [reduced] charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11(k)(1) (DOJ's implementing regulation). Agency fee-waiver determinations are subject to *de novo* review by the Court, limited to the record before the agency at the time of its decision.[3]  5 U.S.C. § 552(a)(4)(A)(vii); *see also, e.g., Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003) [hereinafter *JW v. Rossotti*].  A party requesting a fee waiver under FOIA bears the burden of proving his entitlement to such a fee waiver.  *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004) [hereinafter *JW v. DOJ*].  However, "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters."  *JW v. Rossotti*, 326 F.3d at 1312 (internal quotation marks omitted) (quoting *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir. 1987)).

Just as a plaintiff cannot introduce evidence in support of a fee waiver which was not available to the agency, an agency cannot introduce arguments it did not make at the administrative stage.  The Court may not consider reasons not offered by the agency in the denial letter.  *See Friends of the Coast Fork v. Dep't of the Interior,* 110 F.3d 53, 55 (9th Cir. 1997) ("The agency must stand on whatever reasons for denial it gave in the administrative proceeding. If those reasons are inadequate, and if the requesters meet their burden then a full fee waiver is

---

[3] The Court may, in its discretion, take judicial notice of information not included in the administrative record if that information meets the criteria established by the Federal Rules of Evidence.  *See* Fed. R. Evid. 201(b)(2) (judicial notice may be taken of facts not subject to

in order.") [hereinafter *Coast Fork*]; *Independence Mining Co. v. Babbitt,* 105 F.3d 502, 511-12 (9th Cir. 1997) (citing *Indus. Union Dep't v. Am. Petroleum Inst.,* 448 U.S. 607, 631 n.31 (1980)); *Manley v. Dep't of the Navy*, No. 07-721, 2008 U.S. Dist. LEXIS 111499, at *12 (S.D. Ohio Sept. 22, 2008) ("There is nothing in the Navy's denial decision indicating the Navy took exception to plaintiff's reliance on the Navy's publications or actions in supporting his request for a fee waiver . . . .") (citing *Coast Fork*); *W. Watersheds Proj. v. Brown*, 318 F. Supp. 2d 1036, 1039 (D. Idaho 2004) ("[T]he district court may not consider reasons not offered by the agency in the denial letter.") (citing *Coast Fork*); *Inst. for Wildlife Prot. v. U.S. Fish and Wildlife Serv.*, 290 F. Supp. 2d 1226, 1228 (D. Or. 2003) ("The agency must adhere to the reasons given at the administrative level to prove their case and cannot later employ post hoc rationales . . . .") (citing *Coast Fork*); *Judicial Watch, Inc. v. GSA*, No. 98-2223, 2000 U.S. Dist. LEXIS 22872, at *14-15 (D.D.C. Sept. 25, 2000) ("[T]he court may not consider new reasons by the agency that were not advanced in its denial letter.") [hereinafter *JW v. GSA*] (citing *Coast Fork* and *Indus. Union Dep't*); *Landmark Legal Found. v. IRS*, No. 97-1474, 1998 U.S. Dist. LEXIS 21722, at *7 (D.D.C. Sept. 22, 1998) ("Information, theories, and evidence newly introduced by the parties in their summary judgment papers cannot be considered.") (citing *Coast Fork*).

## ARGUMENT

Because none of the issues remaining in controversy apply to more than one count in this briefing, this brief will address the three counts separately.

---

reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

## I.    COUNT 4: EOUSA

In response to Stein's straightforward FOIA request, EOUSA performed a perfunctory search, categorically withheld everything it found under a breathtakingly broad interpretation of Exemptions (b)(5) and (b)(7)(E), was instructed by OIP to do a better job, misled Stein and the Court as to how it was processing the request, and ultimately defended its initial actions with a flurry of conclusory and internally contradictory assertions.  Nothing EOUSA has done since receiving this request has been in accordance with FOIA.

### A.    EOUSA CONSTRUED STEIN'S REQUEST TOO NARROWLY

Agencies have a duty to construe the subject material of FOIA requests liberally to ensure responsive records are not overlooked.  *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  An agency may not "read [a] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester."  *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985).  "[A]ll federal agencies should go as far as they reasonably can to ensure that they include what requesters want to have included within the scopes of their FOIA requests."  DOJ, *OIP Guidance: Determining the Scope of a FOIA Request*, FOIA Update, Vol. XVI, No. 3, at 4 (1995).  *See also Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010) (rejecting CIA's argument that its search for records about the "attention shake" interrogation technique was adequate because it located no records due to the technique being called the "attention grasp").

In 2011 Stein obtained a recently released index of USABook Topic Pages (although he did not know the term "Topic Page" at the time), which is attached as Ex. D.  Based on the title of the index—USABook List of Topics—he filed a FOIA request for what was behind the link

10

"Freedom of Information."  USABook Index at 3.  Specifically, knowing that the EOUSA analyst would know what the USABook was and what the "List of Topics" was, he requested "all records in the USA Book Desktop Library . . . indexed in the USA Book List of Topics by the topic 'Freedom of Information.'"  (Luczynski Decl. ¶ 4.)  In other words, to use the words of EOUSA's declaration, he requested "the FOIA Topic Page."  Had he known that term, he likely would not need to be writing this brief.

Instead of simply going to the USABook List of Topics, finding the one labeled "Freedom of Information," clicking on it, and processing everything that was revealed, EOUSA instead constructed an unnecessarily convoluted definition of what would be "responsive," which it now describes as "the Chapters relevant to the request in the FOIA portion of the USABook."  (*Id.* ¶ 8.)  Not "the FOIA portion of the USABook," which would arguably be the FOIA Topic Page and everything on it, but "*the Chapters relevant to the request in* the FOIA portion of the USABook."  When one considers that "Chapter" is another term for "Topic Page" (*id.* ¶ 16), this description becomes the virtually nonsensical "the Topic Pages relevant to the request in the FOIA Topic Page."

For unclear reasons, EOUSA then determined that four documents listed on the FOIA Topic Page were responsive to Stein's request, and the rest were not.  (*See id.* ¶¶ 8, 17.)  In particular, it determined that two pages of "links" were "not part of the 'list of FOIA Topics'" (*id.* ¶ 18), even though: (1) the USABook List of Topics is a list of Topic Pages; (2) the "Freedom of Information" link on the USABook List of Topics is a link to the FOIA Topic Page; and (3) "Each USABook Topic Page . . . includes a list of related links" (*id.* ¶ 16).  In other words, the "list of links" is part of the FOIA Topic Page, and the request is most reasonably interpreted to be for everything on *the FOIA Topic Page*.

EOUSA's interpretation is rendered even more confusing and internally inconsistent by its statement to the Court in August 2013 that it would provide Stein with "a list of potentially responsive documents" (JSR at 1), which its counsel referred to as "the FOIA topic page." (Ex. C.)  Then, when filing this Motion, it describes Topic Pages as entire "'chapters' of written text" (Luczysnki Decl. ¶ 15) which "may also contain attorney notes which may alert other DOJ attorneys to legal issues or new relevant federal cases; assist attorneys with suggestions for legal research; and[ ] suggest whom a DOJ attorney should contact for advice." (*Id.* ¶ 16.)  From this description, the two-page list of links appears to be only *part* of the FOIA Topic Page, notwithstanding DOJ's counsel's statement, leaving open the possibility that EOUSA reneged on its promise to Stein and the Court that it would provide Stein with a list of potentially responsive documents by 15 September 2013.[4]

In short, it is impossible to tell from EOUSA's filings exactly what the FOIA Topic Page *is* and what is on it.  However, the resolution here is simple.  A reasonable, simple, liberal construction of Stein's request includes "the FOIA Topic Page" and whatever is on it, and if it includes a page of links, whatever is behind those links is also responsive.  The only caveat is that EOUSA need not process records which are already publicly available.[5]

---

[4] This hypothesis—that the list of links is only *part* of the FOIA Topic Page—is reinforced by the fact that all of the examples of *other* Topic Pages (each bearing the title "USABook Topic Page" in the top left corner) Stein has located contain significantly more information than what EOUSA released to him.  (*See* Topic Pages, attached as Ex. E.)

[5] From the list of links, the only links which appear to be neither (a) publicly available nor (b) processed by EOUSA are: (1) EOUSA FOIA site; (2) Privileges; (3) Deliberative Process Privilege; (4) Governmental Privileges; (5) Touhy Regulations; (6) Investigative Files Privilege; and (7) all "Training" videos.  (Luczynski Decl., Ex. D, Dkt. #32-2.)  This obviously does not include any other parts of the "FOIA Topic Page" that EOUSA has not identified.

### B.    EOUSA HAS NOT JUSTIFIED ANY WITHHOLDINGS

EOUSA makes purely conclusory arguments for why everything it did (or could) process is exempt under Exemptions (b)(5) and (b)(7)(E), none of which stand up to even the slightest degree of scrutiny.

### 1.    Exemption (b)(5)

EOUSA's argument, in effect, boils down to a proposition that everything the Office of Legal Education ("OLE") writes is protected by the Attorney Work Product Privilege because they include "detailed legal arguments and views to be employed at various stages of litigation and with respect to interpretation and policy" (Luczynski Decl. ¶ 17), are "essentially . . . blueprint[s] for handling litigation substantively and procedurally" (*id*.), "are prepared . . . with the understanding and belief that they are internal training materials and Guidelines to be followed by DOJ (and other government) attorneys" (*id.* ¶ 20), "were prepared in anticipation of DOJ litigation at the direction of one or more attorneys" (*id.* ¶ 21), and "as a general practice[ ] are not distributed outside the federal law enforcement community" (*id.* at 4 n.1).  Stripped of all the talismanic language, however, this amounts simply to a belief that OLE is entitled to a blanket exemption because it writes things for attorneys to read, an argument which the Court should reject.

Despite its admitted breadth, particularly as applied under Exemption (b)(5), the Attorney Work Product doctrine has important limits that are noteworthy for their application in this case.  *Shapiro v. DOJ*, 969 F. Supp. 2d 32 *passim* (D.D.C. 2013).[6]  First, as a threshold matter, "[t]he work-product rule does not extend to every written document generated by an

attorney; it does not shield from disclosure everything that a lawyer does." *Jordan v. DOJ*, 591 F.2d 753, 775 (D.C. Cir. 1978) (*en banc*), *disapproved on other grounds by Crooker v. ATF*, 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*). Not "all written materials obtained or prepared by an adversary's counsel with any eye toward litigation are necessarily free from discovery in all cases." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Thus, "the [Attorney Work Product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *In re Sealed Case*, 146 F.3d 881, 887, (D.C. Cir. 1998) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1515, (D.C. Cir. 1993)).

Second, critical to eligibility for protection under the work product doctrine is that "it has uniformly been held to be limited to documents prepared in contemplation of litigation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980) [hereinafter *Coastal States*]. In evaluating which side of the line the material falls on, courts must be mindful that the work-product doctrine, as broad as it may be, "is not endless." *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 955 F. Supp. 2d 4, 19 (D.D.C. 2013). "[I]f the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Id.* (quoting *Senate of P.R. v. DOJ*, 823 F.2d at 586-87).

In this case, as in *Shapiro*, the withheld documents do not meet this test. In *Shapiro*, EOUSA attempted to withhold a Brief Bank in its entirety under the Attorney Work Product Privilege, arguing both that revealing what information the author chose to include would reveal

---

[6] Most of the following discussion of the Attorney Work Product Privilege is drawn directly from Judge Howell's excellent opinion, although Stein cites directly to that opinion only rarely to

his mental processes, and that the summaries he included would do the same. The court's

reasoning in that case applies equally well to EOUSA's arguments in this case and warrants

direct quotation:

> The "legal theories" contained in the Brief Bank's selection are representative of information "that, even absent compelled disclosure . . . will probably come to light during the course of trial, if not before." The Brief Bank is a resource to be used to craft pleadings that will be filed in FOIA litigation around the country. Unlike witness interview statements or other materials prepared by attorneys as part of an assessment of a client's potential claims or legal liability, which materials may never become public, the briefs and cases in the Brief Bank are, by definition, materials that have already been revealed in the course of FOIA litigation and "would probably be revealed in due course" through repetition in filings in other court cases. A Brief Bank that "would likely remain inviolate in the bosom of the" EOUSA would hardly qualify as a "resource" for attorneys. Thus, the first consideration militates strongly against the defendant's argument that the Brief Bank as a whole is attorney work product.
>
> With respect to the second consideration, the defendant does not argue that the Brief Bank was compiled for any specific claim or case but has made only the conclusory statement that the Brief Bank was compiled "in anticipation of future FOIA litigation." While the work product doctrine may shield documents from disclosure even when no specific claim has yet arisen, as noted, the defendant must nonetheless show that based on the nature of the documents at issue and the context in which they were created, they "can fairly be said to have been prepared or obtained because of the prospect of litigation." The "prospect of litigation" cannot be read over-broadly to be so divorced from any specific legal claim such that it renders this fundamental criterion for invocation of the work product doctrine meaningless.
>
> The defendant has not cited any particular litigation for which the Brief Bank was prepared; it merely states it is "a tool for use in anticipated FOIA litigation." Considering that "[e]ach fiscal year, agencies receive and process thousands of requests," it goes without saying that the EOUSA's FOIA staff will be involved in FOIA litigation in the future. Yet, the mere inevitability of the defendant's involvement in FOIA litigation, for which the Brief Bank may be a useful tool, does not convert the Brief Bank into protected attorney work-product. The nature of the contents of the Brief Bank, consisting of publicly-filed cases and briefs addressing the myriad issues that have arisen in FOIA litigation, is necessarily general in order to serve as a resource to agency lawyers litigating FOIA cases. This very generalness not only defeats a finding that disclosure would reveal the

---

avoid unnecessary clutter.

thought processes of the attorney compiling the Brief Bank, but also defeats a finding that the compilation is sufficiently tethered to any anticipated litigation. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012) (work-product protection denied to agency attorney's PowerPoint slideshow used to educate agency employees about adjudications, noting that "[w]hile those slides [were] literally 'in anticipation of litigation' . . . they [did] not anticipate litigation in the manner that the privilege requires" since the attorneys "were not worrying about litigation ensuing from any 'particular transaction,' . . . nor . . . assembling information, sifting through facts, preparing legal theories, or planning strategy for [the agency] case" but, rather, the "slides convey[ed] routine agency policies" which "happen to apply in agency litigation").

The defendant's withholding here raises the specter of reading Exemption 5 "over-broadly," against which the D.C. Circuit warned because "if the agency were allowed 'to withhold any document prepared by any person in the government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'"

\*\*\*

Neutral summaries of the legal holdings of cases and the issues they present in stand-alone documents, untethered to any particular claim in litigation, do not qualify for work product protection, even when the documents discuss legal issues arising in agency litigation.  For instance, in *Coastal States*, the Department of Energy ("DOE") invoked Exemption 5's work-product protection to withhold memoranda from DOE regional attorneys regarding interpretations of regulations that had been requested by agency auditors needing guidance "within the context of particular facts encountered while conducting an audit of a firm."  The majority of the memoranda at issue were not "formal" interpretations of regulations nor binding on audit staff, but "neutral, objective analyses of agency regulations," resembling "question and answer guidelines which might be found in an agency manual."  The D.C. Circuit rejected DOE's blanket assertion of the work-product doctrine with respect to the documents, holding that the agency could assert work-product protection only where it had established that "a specific claim had arisen, was disputed, . . . and was being discussed in the memorandum."

*Shapiro*, 969 F. Supp. 2d at 33-36 (citations omitted except one).

EOUSA rests its argument on one case, *Soghoian v. DOJ*, 885 F. Supp. 2d 62 (D.D.C. 2012).  However, *Soghoian* was litigated by the plaintiff *pro se*, and the court's decision failed to address either *In re Sealed Case* or *Coastal States*, rendering its utility relatively useless.

16

The direct applicability of *Shapiro* to the instant case is obvious.  The privilege does not protect "question and answer guidelines which might be found in an agency manual," *Coastal States*, 617 F.2d at 863, and two of the three withheld documents *are agency manuals*. (Luczynski Decl. ¶ 17.)  One actually *is* a "question and answer" document.  (*Id*.)  The remaining document—the USABook Privacy Act Topic Page—is virtually identical in the way in which it is used as a reference.  As for the unspecified other documents EOUSA claims to have withheld (*id*. ¶ 18), it has not met its first burden of describing them with any degree of particularity, nor has it even claimed clearly that it even *reviewed* them.  Even so, EOUSA describes these documents as "training materials and Guidelines *to be followed by DOJ (and other government) attorneys*."  (*Id*. ¶ 20 (emphasis added).)  These materials are clearly not privileged.

### 2.    Exemption (b)(7)(E)

After claiming that its FOIA litigators' reference materials are privileged, EOUSA then advances the argument that defeating the DOJ in a FOIA lawsuit is the same as breaking the law. (*See* DOJ's Mem. at 10.) This argument equates FOIA requesters with "those inclined to violate the law" and cites a D.C. Circuit case about tax evasion.  (*Id.* (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193-94 (D.C. Cir. 2009)).)  This argument is both meritless and borders on the sanctionable.

"By its express terms, [Exemption (b)(7)(E)] authorizes the withholding of information consisting of, or reflecting, a law enforcement 'technique' or a law enforcement 'procedure' *if* it is 'for law enforcement investigations and prosecutions,' not internal agency policies wholly unrelated to investigations or prosecutions." *Cowsen-El v. DOJ*, 826 F.Supp. 532, 524 (D.D.C. 1992) (emphasis in original). "It exempts from disclosure information that could *increase the risks* that a law will be violated or that past violators will escape legal consequences." *Mayer*

*Brown*, 562 F.3d at 1193 (emphasis in original).  Every case in the DOJ FOIA Guide in which

Exemption (b)(7)(D) was upheld involved criminal or national security investigations.  DOJ,

*Guide to the Freedom of Information Act: Exemption 7(E) passim* (Apr. 23, 2013), *at*

http://www.justice.gov/oip/foia-guide13/exemption7e.pdf (last accessed Sept. 19, 2014).  To

Stein's knowledge, nobody in the federal government has ever tried to say that winning a FOIA

case constitutes "circumvention [of the law] in future litigations with the DOJ and Government"

(Luczynski Decl. ¶ 17), and the Court should ensure that nobody does again.

## II.     COUNT 5: FBI (HITCHENS)

As stated above, Stein only challenges FBI's invocation of Exemption (b)(7)(D) in Count

5.  Put simply, while FBI arguably establishes that these records were created for law

enforcement purposes, it jumps a step when it then proceeds to demonstrate that there was an

expectation of confidentiality.  (DOJ's Mem. at 22.)  Stein does not seek to learn the *identities* of

FBI's confidential sources; he only seeks the information they provided.  However, in order to

withhold such information, it must have been obtained in the course of a criminal or national

security investigation.  5 U.S.C. § 552(b)(7)(D).  From the outset, civil investigations have been

excluded from this protection.  *See Irons v. FBI*, 880 F.2d 1446, 1450 (1st Cir. 1989) ("The only

source information that would be available would be that compiled in civil investigations.")

(quoting Sen. Kennedy from Source Book: Legislative History, Texts, and Other Documents,

Freedom of Information Act and Amendments of 1974 (P.L. 93-502), Joint Committee Print,

March 1975, at 459); *Radowich v. U.S. Att'y, Dist. of Md.*, 658 F.2d 957, 963 (4th Cir. 1981)

(same); *RCA Global Commc'ns, Inc., v. FCC*, 524 F.Supp. 579, 585 (D. Del. 1981) ("Plainly the

FOIA does not authorize a blanket exemption for confidential sources in civil cases, as it does

for criminal investigations.").

18

Neither of the FBI investigations involving Hitchens for which Exemption (b)(7)(D) is cited were criminal or national security investigations.  One was pursuant to his application for Permanent Resident immigration status, and the other was as a result of his request for a White House press pass.  (4th Hardy Decl. ¶ 82(a).)  FBI appears to argue that the fact that it ran a criminal record check on him in each case transformed these events into criminal investigations (*see id.*), but such a broad definition of "criminal investigation" would allow this exemption to swallow the rest of FOIA, since criminal record checks are part of virtually every civil investigation in the modern world.

## III.    COUNT 6: FBI (TODD)

Stein has previously made all of his arguments for why he warrants a public interest fee waiver, and he respectfully refers the Court to his Motion for a Preliminary Injunction, Dkt. #18 (filed Mar. 31, 2014) and his Reply in support of that Motion, Dkt. #23 (filed Apr. 7, 2014) and incorporates those arguments herein.  He regrets that he cannot reproduce them here, but Judge Sullivan restricted the length of this Opposition to less than half the normal page count after he had already filed his first brief opposing DOJ's first summary judgment motion, and he does not have the ability to use agency declarations to make legal arguments in the way that DOJ has circumvented Judge Sullivan's length restriction.  (*See* Def.'s Mot. Part. Summ. J. Addressing Counts IV, V & VI of Pl.'s Compl., Dkt. #36-1, at 1 n.1 (filed Aug. 26, 2014) ("For additional detail about the justifications for withholdings, the Court is directed to the supporting declarations attached hereto.").)  Should the Court authorize it, he is willing to supplement this brief with a supplemental filing addressing the fee waiver issue.

**CONCLUSION**

DOJ has not met its burden to justify that it properly searched for and processed records responsive to Count 4, that it released all non-exempt information responsive to Count 5, or that its determination to charge duplication fees to Stein in Count 6 was justified.  Accordingly, the Court should deny summary judgment to DOJ.

Date:   September 17, 2014

Respectfully submitted,

＿＿/s/ Kelly B. McClanahan＿
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEFFREY STEIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:13-cv-00571 (TSC) |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
<u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

Plaintiff Jeffrey Stein admits all statements raised in Defendant's Statement of Material

Facts Not in Dispute, Dkt. #32-3 (filed July 31, 2014).

Date:   September 17, 2014

Respectfully submitted,

<u>   /s/ Kelly B. McClanahan   </u>
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
<u>Kel@NationalSecurityLaw.org</u>

*Counsel for Plaintiff*