# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY STEIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> U.S. DEPARTMENT OF JUSTICE, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 13-cv-571 (TSC) |

## MEMORANDUM OPINION

This action concerns six unrelated Freedom of Information Act ("FOIA") requests that Plaintiff Jeffrey Stein made to the Federal Bureau of Investigation (the "FBI"), the Civil Division of the United States Department of Justice, and the Executive Office for United States Attorneys, all of which are components of the United States Department of Justice ("DOJ" or "Defendant").

Defendant has previously filed two motions for summary judgment. This court issued a Memorandum Opinion and Order on those motions in September 2015. *See generally Stein v. U.S. Dep't of Justice*, 134 F. Supp. 3d 457 (D.D.C. 2015).

Presently before the court are Defendant's renewed motions for summary judgment on Counts V and VI of Plaintiff's Complaint, both of which pertain to FBI records requested by Plaintiff. Plaintiff has also cross-moved for summary judgment on Count VI.

Upon consideration of the parties' motions and briefs, and for the reasons set forth below, Defendant's renewed motion for summary judgment on Count V is hereby **GRANTED**, Defendant's renewed motion for summary judgment on Count VI is hereby **DENIED** and Plaintiff's cross-motion for summary judgment on Count VI is hereby **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

   a. <u>Count V (FBI Records Regarding Christopher Hitchens)</u>

On January 9, 2012, Plaintiff submitted a FOIA request to the FBI for all records, including cross-references, regarding the late Christopher Hitchens, the noted British author and journalist. (Fourth Decl. of David M. Hardy, dated May 15, 2014 ("Fourth Hardy Decl."), Ex. A; Compl. ¶ 45).

In March 2012, the FBI released to Plaintiff 19 pages of material previously processed for another requester, with certain information redacted pursuant to FOIA exemptions. (Fourth Hardy Decl. ¶ 8 (citing Ex. C thereto); Compl. ¶ 47). Plaintiff appealed the adequacy of the search and the FBI's assertion of exemptions to DOJ's Office of Information Policy ("OIP"). (Fourth Hardy Decl. Ex. D; Compl. ¶ 48). OIP remanded Plaintiff's request for additional searches, but otherwise affirmed the FBI's determination, including the assertion of all exemptions. (Fourth Hardy Decl. Ex. F; Compl. ¶¶ 49-50). After conducting additional searches, the FBI reviewed 65 pages of records and released 42 of those pages to Plaintiff in full or in part, with certain information again redacted. (Fourth Hardy Decl. ¶ 13).

The first round of summary judgment briefing on Count V concerned Plaintiff's challenge to the FBI's assertion of FOIA exemption (b)(7)(D). In its September 2015 Memorandum Opinion and Order, the court found that while the FBI had properly withheld information pursuant to exemption (b)(7)(D) on the one page for which it had asserted an express assurance of confidentiality, it had not met its burden of establishing that it properly withheld information pursuant to exemption (b)(7)(D) on the 28 pages of records for which it had asserted an implied assurance of confidentiality. *See Stein*, 134 F. Supp. 3d at 483-87. Accordingly, the court ordered Defendant to provide a sufficient explanation for its assertion that an implied assurance of confidentiality permitted the withholding of information on these 28 pages. *See id.* at 487.

The declaration accompanying Defendant's renewed motion for summary judgment on Count V avers as follows:

> The FBI's conclusion that the foreign government agency at issue here expected confidentiality in its dealings with the FBI and with regard to the information it provided to the FBI is based on the Foreign Government Information Classification Guide #1 (the "G-1 Guide"). . . . The G-1 Guide governs classification of foreign government information that foreign governments have asked the FBI to protect over the course of time. The FBI uses the G-1 Guide to determine the level and duration of derivative classification of foreign government information. . . .
>
> While ostensibly a classification document, the G-1 Guide also provides for confidentiality in non-national security areas. Specifically, it provides that the relationships between certain foreign law enforcement entities and the FBI will not be disclosed and will remain confidential, at the request of those foreign entities.
>
> As relevant here, according to the G-1 Guide, the foreign agency referenced in the records at issue here requested its relationship with the FBI be classified. . . . [T]he fact that the foreign intelligence agency referenced in the responsive records here specifically requested its relationship with the FBI be classified evidences that it expected and expects confidentiality in its interactions with the FBI and with regard to the information it provided to the FBI for law enforcement/national security purposes under applicable information sharing agreements.

(Sixth Decl. of David M. Hardy, dated Jan. 11, 2016 ("Sixth Hardy Decl."), ¶¶ 7-9). In his response brief, Plaintiff concedes that, based on this new evidence, the court must find that the information at issue in Count V was provided under an implicit assurance of confidentiality. (Pl.'s Count V Resp. at 1).

    b. Count VI (FBI Records Regarding Gwyneth Todd)

In May 2012, Plaintiff and Gwyneth Todd jointly submitted a FOIA request to the FBI for all of the agency's records regarding Todd. (Fourth Hardy Decl. Ex. G). The request specified that the requesters sought "all records about the events last year" involving an FBI agent whom Todd claimed had visited her Canberra, Australia home under false pretenses. (*Id.*) (citing Dylan Welch, *Bungling Spy Comes in for a Cold Shoulder*, Sydney Morning Herald (Mar. 2, 2011), http://www.smh.com.au/national/bungling-spy-comes-in-for-a-cold-shoulder-

3

20110301-1bd6u.html) (emphasis removed). The requesters also sought a public interest fee waiver. (*Id.*).

In November 2013, the FBI denied the public interest fee waiver request and informed Plaintiff that it had located what it estimated to be approximately 10,000 pages of potentially responsive material. (Fourth Hardy Decl. Ex. I). Plaintiff was also advised that the fee for the request was estimated to be $290. (*Id.*). Since the estimated fee exceeded $250, the FBI requested a 25% partial advance payment of $72.50 within thirty days. (Fourth Hardy Decl. ¶ 17 (citing Ex. I thereto)).

In the meantime, the FBI reviewed one file consisting of 174 pages and released 147 pages to Plaintiff in full or in part, with certain information redacted pursuant to FOIA exemptions. (*Id.* ¶ 18 & n.2). In February 2014, the FBI advised Plaintiff that, due to his unwillingness to pay fees, it had administratively closed his FOIA request without processing any records beyond these 174 pages. (*Id.* ¶ 18). The parties subsequently litigated the denial of Plaintiff's fee waiver request, with the court concluding in its September 2015 Memorandum Opinion and Order that Plaintiff was not entitled to a public interest fee waiver because he had not met his burden of demonstrating that the release of the requested records would be in the public interest. *See Stein*, 134 F. Supp. 3d at 487-89.

In October 2015, Plaintiff indicated that he was willing to pay the $290 fee, while still reserving his right to challenge it on the basis of the FBI's delay in processing his request, which he considered to be a separate issue from the public interest fee waiver issue. (Joint Mot. for Additional Enlargement of Time to File Joint Proposed Schedule at 1; Pl.'s Count VI Opp'n & Cross-Mot. Ex. A). Plaintiff did not actually remit any payment to the FBI, however. (Def.'s Count VI Statement of Material Facts ("SOF") ¶ 8) (citing Seventh Decl. of David M. Hardy, dated Feb. 17, 2016 ("Seventh Hardy Decl."), ¶ 10).

In a December 1, 2015 status report, Defendant notified the court that, despite the fact that Plaintiff had not remitted any payment, it had begun to process the first 500 pages of records. (Def.'s Dec. 1, 2015 Status Report). Shortly thereafter, however, the FBI concluded that the number of potentially responsive pages was actually 20,000, double its previous estimate. (SOF ¶ 10 (citing Seventh Hardy Decl. ¶ 12 & n.3)). The FBI notified Plaintiff of the increased page count estimate on December 9, 2015, and advised him that the fee estimate and advance payment amount had also increased, to $610 and $146.25, respectively. (Seventh Hardy Decl. ¶ 12 (citing Ex. A thereto)).

Given Plaintiff's stated willingness, in October 2015, to pay the originally estimated $290 fee, "the FBI processed and released an interim response to plaintiff on January 4, 2016, even though [he] had still not made the required partial advance payment." (*Id.* ¶ 13 (citing Ex. B thereto)). The FBI again reminded Plaintiff that "he needed to submit partial advance payment in the amount of $146.25 within thirty days of its December 9, 2015 letter (*i.e.*, by January 9, 2016), or his request would otherwise be closed." (*Id.*) (footnote omitted).

One week later, on January 11, 2016, Plaintiff's counsel emailed defense counsel, stating that Plaintiff was still considering his response to the December 9, 2015 letter, and that the FBI "should not consider [Plaintiff's] lack of response as an indication that [he] will not pay." (Pl.'s Count VI Opp'n & Cross-Mot. Ex. B). Plaintiff's counsel also stated that Plaintiff was entitled to "20 CDs of records with no less than 500 pages on each CD" as a result of Plaintiff's agreement to pay the previously estimated fee of $290. (*Id.*). Defense counsel responded two days later, on January 13, 2016, stating that "the deadline for submitting the advance payment of fees to the FBI expired on January 9th," and that if Plaintiff failed "to remit any advance payment, the FBI [would have] no alternative but to discontinue processing [his] request under

its regulations." (*Id.*). Defense counsel also asked Plaintiff's counsel to give her an idea of what his intentions were concerning the overdue payment. (*Id.*).

Plaintiff's counsel replied the next day, January 14, 2016, posing a number of questions regarding what would happen if Plaintiff immediately paid either $72.50 or $146.25. (*Id.*). Defense counsel did not respond to this email, or to a follow-up email on January 27, 2016. (Third Decl. of Kelly McClanahan, dated Apr. 4, 2016 ("Third McClanahan Decl."), ¶¶ 3-4). On February 10, 2016, one of defense counsel's colleagues contacted Plaintiff's counsel and stated that he had been asked by the FBI to advise Plaintiff's counsel that the FBI "would not provide any of the clarifications requested" in the January 14, 2016 email. (*Id.* ¶ 5).[1]

The FBI subsequently stopped processing Plaintiff's request due to his failure to pay any portion of the assessed fees. (Seventh Hardy Decl. ¶ 14). On June 1, 2016, however, Plaintiff filed a notice with the court informing it that he had remitted the $72.50 advance payment initially requested by the FBI. (Pl.'s Notice of New Factual Development).

## II. LEGAL STANDARD

### a. Motion for Summary Judgment

Summary judgment may be granted if a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis removed); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim

---

[1] Paragraph 5 of the Third McClanahan Declaration mistakenly refers to the January 14, 2016 email as "the 14 February email."

or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination. An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248) (citation omitted). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (citing *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Liberty Lobby*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) ("We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor."). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

b. FOIA

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't*

*of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)-(b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). Thus, the burden is on the agency to show that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B); *Liberty Lobby*, 477 U.S. at 254).

Summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619 (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson*, 565 F.3d at 862). However, an agency's "affidavits must show, with reasonable specificity, why the documents fall within [a given] exemption. The

affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (citations omitted). This requirement is consistent with an agency's general obligation to create "as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure." *Id.* at 1384 (citations omitted). Additionally, a motion for summary judgment should be granted in favor of a FOIA requester "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (alteration in original) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). More specifically, "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (citations omitted). In order to withhold a record or portion thereof under a FOIA exemption, "the Government must make that showing in its *Vaughn* index and in such affidavits as it may submit therewith." *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973)).

### III. ANALYSIS

#### a. Count V (FBI Records Regarding Christopher Hitchens)

The parties agree that the only question for the court to determine in ruling on Defendant's renewed motion for summary judgment on Count V is whether the FBI has provided a sufficient explanation for its assertion that an implied assurance of confidentiality permits the withholding of information on 28 pages of records related to Christopher Hitchens pursuant to

FOIA exemption (b)(7)(D). The declaration accompanying Defendant's renewed motion for summary judgment on Count V avers that the G-1 Guide, which the FBI uses "to determine the level and duration of derivative classification of foreign government information," states that "the foreign agency referenced in the records at issue here requested its relationship with the FBI be classified." (Sixth Hardy Decl. ¶¶ 7, 9). Plaintiff concedes that, based on this new evidence, the court must find that the information at issue in Count V was provided under an implicit assurance of confidentiality. (Pl.'s Count V Resp. at 1).

The court agrees, and finds that the FBI's assertion of FOIA exemption (b)(7)(D) with regard to these 28 pages of records was properly supported by an implied assurance of confidentiality. Accordingly, Defendant's renewed motion for summary judgment on Count V is hereby **GRANTED**.

The court is puzzled by Plaintiff's assertion that, while he does not oppose Defendant's renewed motion for summary judgment on Count V, he "renews his argument" from the prior round of briefing. (*Id.* at 1-2). As Plaintiff has not framed his "renewed" argument as a cross-motion for reconsideration, or as a cross-motion for any other kind of relief, and as he cites no case law or authorities other than the fact that Federal Rule of Civil Procedure 54(b) allows a court "to revise any previous partial opinion at any time prior to closing the case," the court declines to consider his "renewed" argument at this time. (*Id.* at 2).

b. Count VI (FBI Records Regarding Gwyneth Todd)

Defendant's argument in its renewed motion for summary judgment on Count VI is straightforward: Because Plaintiff has never paid any portion of the fees requested by the FBI, the FBI is not required to process his request. (*See generally* Def.'s Count VI Mot. at 5-7). Plaintiff proffers two arguments in his opposition and cross-motion for summary judgment on Count VI. The court will only address the first of those two arguments because it is dispositive

10

of both Defendant's renewed motion for summary judgment on Count VI and Plaintiff's cross-motion for summary judgment on Count VI.

Plaintiff argues that the FBI is not permitted to charge fees to process his request because it made no progress on the request until he filed the instant lawsuit eleven months after first submitting the request. (Pl.'s Count VI Opp'n & Cross-Mot. at 6-7). FOIA provides that an agency "shall not" assess duplication fees to members of the news media such as himself "if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances . . . apply to the processing of the request." 5 U.S.C. § 552(a)(4)(A)(viii). Paragraph (6) requires agencies to "determine within 20 days . . . after the receipt of [a FOIA] request whether to comply with such request," and to "immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." *Id.* § 552(a)(6)(A)(i). It also provides that this 20-day time period "shall commence on the date on which the request is first received by the appropriate component of the agency," and that "[t]he 20-day period shall not be tolled by the agency except" in certain limited instances, none of which appear to be relevant here. *Id.* § 552(a)(6)(A)(ii)(I)-(II). Plaintiff asserts that no "unusual or exceptional circumstances" apply here, as those terms are used in § 552(a)(4)(A)(viii). (Pl.'s Count VI Opp'n & Cross-Mot. at 7-8). Accordingly, Plaintiff contends that, because the FBI "simply took its time and then assessed fees after [he] had filed suit," the court should find that it is prohibited from assessing any duplication fees for the request. (*Id.* at 8).

Defendant does not respond to this argument or even mention § 552(a)(4)(A)(viii) in its reply brief. Instead, Defendant construes Plaintiff's cross-motion as seeking reconsideration of the court's September 2015 Memorandum Opinion and Order and argues that Plaintiff has failed to establish grounds for reconsideration. (*See generally* Def.'s Count VI Reply and Opp'n). The

11

closest that Defendant comes to actually addressing Plaintiff's § 552(a)(4)(A)(viii) argument is to cite a recent case from this court, *Bartko v. U.S. Dep't of Justice*, 102 F. Supp. 3d 342, 351-353 (D.D.C. 2015). *Bartko*, 102 F. Supp. 3d at 349, quotes *Pollack v. Dep't of Justice*, 49 F.3d 115, 119-20 (4th Cir. 1995), in which the Fourth Circuit held that it was unable to "find a provision which states that when an agency acts untimely, it is obliged to provide the requester with unlimited documentation free of charge."

In reply, Plaintiff argues that the previously litigated public interest fee waiver issue is "completely unrelated" to the question of whether § 552(a)(4)(A)(viii) prohibits the FBI from assessing fees. (Pl.'s Count VI Reply at 2-3). Plaintiff also correctly points out that *Bartko* did not concern § 552(a)(4)(A)(viii), and that the Fourth Circuit was unable to "find a provision which states that when an agency acts untimely, it is obliged to provide the requester with unlimited documentation free of charge," *Pollack*, 49 F.3d at 119-20, because the relevant statutory language did not exist at the time. (Pl.'s Count VI Reply at 6). Plaintiff further argues that, because the FBI has offered no direct refutation of his § 552(a)(4)(A)(viii) argument, the court should deem it conceded. (*Id.* at 3) (citing *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a [non-moving party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [moving party], a court may treat those arguments that the [non-moving party] failed to address as conceded.")).

The court agrees with Plaintiff. Insofar as it addressed Count VI, the court's September 2015 Memorandum Opinion and Order concerned only the limited issue of whether Plaintiff was entitled to a public interest fee waiver. *See Stein*, 134 F. Supp. 3d at 467, 487-89. The question of whether § 552(a)(4)(A)(viii) prohibits Defendant from charging Plaintiff any duplication fees is, as Plaintiff correctly told Defendant in October 2015, "a separate issue from the public

interest fee waiver issue." (Pl.'s Count VI Opp'n & Cross-Mot. Ex. A). Plaintiff is also correct that *Bartko* is inapposite and that the reason the Fourth Circuit could not find a FOIA provision prohibiting agencies from charging fees for requests that had not been timely processed was because § 552(a)(4)(A)(viii) did not exist at the time *Pollack* was decided. *See* 5 U.S.C. § 552(a) (effective to October 1, 1997).

Because – aside from its inapposite citations to *Bartko* and *Pollack* – Defendant has ignored Plaintiff's argument that the FBI's delay in responding to the FOIA request at issue in Count VI triggers § 552(a)(4)(A)(viii)'s prohibition on the assessment of duplication fees, the court will deem Defendant to have conceded the point. *See Baptist Mem'l Hosp.-Golden Triangle v. Leavitt*, 536 F. Supp. 2d 25, 40 (D.D.C. 2008), *aff'd sub nom. Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226 (D.C. Cir. 2009) ("A Party that fails to refute an opposing party's argument on Summary Judgment may be found to have conceded the point."); LCvR 7(b).

Accordingly, Defendant's renewed motion for summary judgment on Count VI is hereby **DENIED**, and Plaintiff's cross-motion for summary judgment on Count VI is hereby **GRANTED**. Defendant is hereby **ORDERED** to process the FOIA request at issue in Count VI of Plaintiff's Complaint free of charge, and to return the $72.50 advance payment remitted by Plaintiff on June 1, 2016, with interest.

### IV. CONCLUSION

Upon consideration of the parties' motions and briefs, and for the reasons set forth above, Defendant's renewed motion for summary judgment on Count V is hereby **GRANTED**, Defendant's renewed motion for summary judgment on Count VI is hereby **DENIED** and Plaintiff's cross-motion for summary judgment on Count VI is hereby **GRANTED**.

Defendant is hereby **ORDERED** to process the FOIA request at issue in Count VI of Plaintiff's Complaint free of charge, and to return the $72.50 advance payment remitted by Plaintiff on June 1, 2016, with interest.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 18, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge