UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JEFFERY STEIN,<br><br>    Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 13-0571 (TSC) |

**RENEWED MOTION FOR SUMMARY JUDGMENT AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................. i

Table of Authorities ......................................................................................................... ii

Background ....................................................................................................................... 1

Legal Standards ................................................................................................................ 3

Argument .......................................................................................................................... 4

    I.      DEFENDANT PROPERLY WITHHELD INFORMATION PURSUANT TO
            FOIA EXEMPTIONS 1, 3, 5, 6, 7(C), 7(D), and 7(E) .......................................... 4

           A.      Exemption 1 Withholdings ........................................................................... 5

           B.      Exemption 3 Withholdings ........................................................................... 7

           C.      Exemption 5 Withholdings ......................................................................... 10

           D.      Exemption 7 Threshold ............................................................................... 15

           E.      Exemption 6 & 7(C) Withholdings ............................................................. 16

           F.      Exemption 7(D) Withholdings .................................................................... 23

           G.      Exemption 7(E) Withholdings .................................................................... 26

    II.     DEFENDANT PROPERLY CONCLUDED THAT THERE ARE NO
            REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE
            RECORDS ........................................................................................................ 30

Conclusion ...................................................................................................................... 33

**TABLE OF AUTHORITIES**

*A. Michael's Piano, Inc. v. FTC,*
  18 F.3d 138 (2d Cir. 1994) ............................................................................. 14

*ACLU v. Dep't of Def.,*
  628 F.3d 612 (D.C. Cir. 2011) .................................................................... 3, 6, 7

*ACLU v. Dep't of Just.,*
  655 F.3d 1 (D.C. Cir. 2011) ........................................................................... 18

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ......................................................................................... 3

*Armstrong v. Exec. Off. of the President,*
  97 F.3d 575 (D.C. Cir. 1996) ......................................................................... 31

*Associated Press v. FBI,*
  265 F. Supp. 3d 82 (D.D.C. 2017) ................................................................. 15

*Ayuda, Inc. v. FTC,*
  70 F. Supp. 3d 247 (D.D.C. 2014) ................................................................. 17

*Beck v. Dep't of Just.,*
  997 F.2d 1489 (D.C. Cir. 1993) ..................................................... 18, 19, 20, 21

*Benjamin v. Dep't of State,*
  178 F. Supp. 3d 1 (D.D.C. 2016) ..................................................................... 3

*Billington v. Dep't of Just.,*
  301 F. Supp. 2d 15 (D.D.C. 2004) ................................................................. 23

*Blackwell v. FBI,*
  646 F.3d 37 (D.C. Cir. 2011) ..................................................................... 26, 27

*Calderon v. Dep't of Agric.,*
  236 F. Supp. 3d 96 (D.D.C. 2017) ................................................................. 22

*Canning v. Dep't of Just.,*
  567 F. Supp. 2d 104 (D.D.C. 2008) ............................................................... 31

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ......................................................................................... 3

*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor,*
  478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................... 5

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ....................................................................... 11

*Computer Prof'ls. for Soc. Resp. v. U.S. Secret Serv.,*

72 F.3d 897 (D.C. Cir. 1996) ................................................................................. 18

*Davis v. Dep't of Just.*,
968 F.2d 1276 (D.C. Cir. 1992) ........................................................................ 17-18

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ............................................................................................ 17

*Dep't of Just. v. Landano*,
508 U.S. 165 (1993) ............................................................................................ 23

*Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .............................................................................................. 4

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ............................................................................................ 17

*DiBacco v. Army*,
795 F.3d 178 (D.C. Cir. 2015) ............................................................................... 8

*Elec. Frontier Found. v. Dep't of Just.*,
739 F.3d 1 (D.C. Cir. 2014) ................................................................................. 11

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
384 F. Supp. 2d 100 (D.D.C. 2005) ..................................................................... 22

*Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*,
740 F.3d 195–03 (D.C. Cir. 2014) ....................................................................... 15

*EPA v. Mink*,
410 U.S. 73 (1973) .............................................................................................. 11

*Fischer v. Dep't of Just.*,
596 F. Supp. 2d 34 (D.D.C. 2009) ....................................................................... 23

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) ............................................................................... 10, 11, 12

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) .......................................................................................... 4

*Government." Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) .................................................................................... 10-11, 11

*Gov't Accountability Project v. Dep't of State*,
699 F. Supp. 2d 97 (D.D.C. 2010) ....................................................................... 17

*Hickman v. Taylor*,
329 U.S. 495 (1947) ............................................................................................ 14

*Jefferson v. Dep't of Just.*,

284 F.3d 172 (D.C. Cir. 2002) ...................................................................................... 16

*Jud. Watch, Inc. v. Dep't of Def.*,
   715 F.3d 937 (D.C. Cir. 2013) ................................................................................... 6

*Jud. Watch, Inc. v. Dep't of State*,
   306 F. Supp. 3d 97 (D.D.C. 2018) .......................................................................... 10

*Jud. Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ............................................................................ 3, 22

*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993) ................................................................................... 8

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ................................................................................... 7

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) ............................................................................ 17, 18

*Long v. ICE*,
   279 F. Supp. 3d 226 (D.D.C. 2017) ................................................................... 17, 22

*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ................................................................................. 11

*Martin v. Off. of Special Counsel*,
   819 F.2d 1181 (D.C. Cir. 1987) ............................................................................... 14

*McCutchen v. Dep't of Health &Human Servs.*,
   30 F.3d 183 (D.C. Cir. 1994) ..................................................................................... 4

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) .................................................................................. 31

*Miller v. Dep't of Just.*,
   872 F. Supp. 2d 12 (D.D.C. 2012) .................................................................. 23-24, 24

*Milton v. Dep't of Just.*,
   783 F. Supp. 2d 55 (D.D.C. 2011) ........................................................................... 17

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) ................................................................................. 8

*Nat'l Treasury Emps. Union v. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986) ................................................................................... 4

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ........................................................................................... 10, 12

*O'Keefe v. Dep't of Def.*,

    463 F. Supp. 2d 317 (E.D.N.Y. 2006) ................................................................................ 22

*Parker v. Dep't of Just.*,
    934 F.2d 375 (D.C. Cir. 1991) ............................................................ 23, 24, 25, 26

*Petroleum Info. Corp. v. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ........................................................................... 11

*Pinson v. Dep't of Just.*,
    313 F. Supp. 3d 88 (D.D.C. 2018) ............................................................ 15-16, 16

*Reep v. Dep't of Just.*,
    302 F. Supp. 3d 174 (D.D.C. 2018) ....................................................................... 8

*Reps. Comm. for Freedom of Press v. FBI*,
    3 F.4th 350 (2021) .................................................................................... 12, 13, 14

*Roth v. Dep't of Just.*,
    642 F.3d 1161 (D.C. Cir. 2011) ........................................................................... 23

*Rudometkin v. United States*,
    140 F.4th 480 (D.C. Cir. 2025) ...................................................................... 31, 32

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................... 3, 11-12

*Schoenman v. FBI*,
    575 F. Supp. 2d 136 (D.D.C. 2008) ..................................................................... 22

*Span v. Dep't of Just.*,
    696 F. Supp. 2d 113 (D.D.C. 2010) ....................................................................... 3

*Spirko v. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998) ............................................................................... 5

*Tax Analysts v. I.R.S.*,
    117 F.3d 607 (D.C. Cir. 1997) ........................................................................ 14, 15

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ............................................................................... 4

*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir. 1975) ........................................................................... 12

*Weisberg v. Dep't of Just.*,
    705 F.2d 1344 (D.C. Cir. 1983) ............................................................................. 3

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 4

Defendant, the Department of Justice, pursuant to Federal Rule of Civil Procedure ("Rule") 56, respectfully renews its motion for summary judgment in this case, which arises under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1]

## BACKGROUND

The Court has previously ruled on many of the disputed claims and the only remaining disputed records in this case come from the Federal Bureau of Investigation ("FBI") and fall under Count VI of the Complaint, which was based on Plaintiff's request for records relating to Gwyneth Todd. (ECF No. 65 at 3, 13-14.) Plaintiff does not challenge the adequacy of FBI's search for records. (ECF No. 41 at 3), nor does Plaintiff challenge any withholdings from EOUSA.

The FBI processed 7,004 pages of records responsive to Plaintiff's request concerning Gwenyth Todd (Count VI). Declaration of Amie Marie Napier ("Napier Decl.") ¶ 5.  In an effort to resolve this matter, Plaintiff provided the FBI seven criteria for the FBI to research.  *Id.*  The FBI performed the requested research and is now briefing only a sample of responsive material for Count VI.  *Id.*  The sample consists of 2,537 pages of records that met the criteria from Plaintiff

---

[1]     On January 27, 2020, Defendant filed its original motion for summary judgment on the remaining claim in this case: Count VI (records relating to Gwyneth Todd). *See* Def. Mot. Summ. J. (ECF No. 109, "Def. MSJ") at 2.  Instead of filing an opposition to Defendant's motion for summary judgment, Plaintiff filed a motion asking the Court to compel a declassification review by the Department Review Committee of the information being withheld pursuant to Exemption 1, which exempts properly classified information from disclosure under FOIA.  Pl. Declassification Mot. (ECF No. 119).  On April 5, 2023, the court denied without prejudice Defendant's summary judgment motion, because Plaintiff sought to litigate whether the records related to Count VI could be declassified. Min. Order (Apr. 5, 2023).  The Court denied Plaintiff's Declassification Motion.  Mem. Op. (ECF No. 129).  Plaintiff then filed a motion asking the Court to remand the case as to Count VI so that Plaintiff could file an administrative appeal and become eligible for a declassification review.  Pl's Mot. (ECF No. 136).  On April 16, 2025, the Court denied Plaintiff's motion for partial remand and stated that "Plaintiff is free to dismiss Count VI and refile his FOIA request with Defendant to be eligible for an administrative appeal. Or both parties may fully brief a motion for summary judgment." Op. & Order (ECF No. 143) at 3.  Today, after updating the relevant declarations, Defendant renews its motion.

as well as context pages provided by the FBI in its October 5, 2018 supplemental release. *Id.* Of the 2,537 total pages (from the sample and the context pages), 65 pages were released in full ("RIF"), 902 pages were released in part ("RIP"), and 1,570 pages were withheld in full ("WIF") based on various FOIA exemptions.  *Id.* ¶ 6.

As explained below, the FBI's attached declaration and *Vaughn* index support all of the disputed withholdings, which are asserted pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E).  Several withholdings consist of information provided to the FBI by other government agencies. The information withheld on behalf of Department of the Army (Army), United States Customs and Border Protection ("CBP"), Central Intelligence Agency ("CIA"), Department of Defense ("DOD"),[2] Department of Justice Criminal Division ("DOJ-CRM"), Department of State (State), United States Immigrations and Customs Enforcement ("ICE"), Department of the Navy (Navy), and the United States Department of the Treasury (Treasury) is described in the FBI's declaration. *See* Napier Decl. ¶¶ 6, 123 (Army), 124 (CBP), 125 (CIA), 126 (DOJ-CRM), 127 (DOS), 128 (ICE), 129 (Navy), 130 (Treasury), and 131 (DOD). For the information from Army, DOJ-CRM, the State, the Navy, Treasury, and DoD, these agencies also provided separate declarations which are referenced in and attached to the FBI's declaration here. *See id*. ¶¶ 123 & Ex. B (Army), 127 & Ex. D (State), 129 & Ex. E (Navy), 130 & Ex. F (Treasury), and 131 & Ex. G (DoD). For DOJ-CRM, the justifications appear in the Napier Declaration, supplemented by DOJ-CRM's revised *Vaughn* index. *See* Napier Decl. ¶ 126 and Exhibit C.[3]

---

[2]     The Department of Defense was renamed as the Department of War on September 5, 2025. As such, documents identifying DOD equities in this case now fall under the Department of War.

[3]     Defendant also respectfully submits herewith a Statement of Undisputed Fact.

## LEGAL STANDARDS

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)).  At summary judgment, the "agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency withholding records under a FOIA exemption "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

The withholding agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And this evidence is entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

- 3 -

**ARGUMENT**

**I.     DEFENDANT PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA
EXEMPTIONS 1, 3, 5, 6, 7(C), 7(D), and 7(E)**

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health &Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  FOIA requires that an agency release records responsive to a properly submitted request if the records are not protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  A court must give FOIA's exemptions "a fair reading," as these exemptions serve "important interests" and "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up). If information falls within one or more FOIA exemptions, an agency can withhold that information if (1) the agency "reasonably foresees that disclosure would harm an interest protected by an exemption," or (2) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union ("NTEU") v. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). Such an index or other evidence offered by an agency, such as a declaration, must collectively contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9.

Thus, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

As shown in the Napier Declaration and its exhibits, the Defendant and consulting agencies properly and judiciously applied Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E) to withhold information the disclosure of which is prohibited by statute, is pre-decisional and deliberative, reveals personally identifiable information of government employees, relates to the work of confidential sources, discloses law enforcement sensitive information or law enforcement techniques, and which is classified. Defendant describes each of these exemptions and the bases for their application below.

### A.    Exemption 1 Withholdings

Pursuant to Exemption 1, agencies may withhold records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and that "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526 currently governs the classification of government records. 75 Fed. Reg. 707 (Dec. 29, 2009). Under that order's substantive criteria, information may be

classified if it "pertains to" one or more of eight categories of information, *id*. § 1.4, and if an original classification authority has "determine[d] that the unauthorized disclosure of the information reasonably could be expected to result in [identifiable or describable] damage to the national security," *id*. § 1.1(a)(4). Relevant here, information may be classified if it "pertains to" "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id*. § 1.4(c). As the D.C. Circuit has noted, "pertains is not a very demanding verb." *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted). And, "[b]ecause courts lack the expertise necessary to second-guess . . . agency opinions in the typical national security FOIA case, [they] must accord substantial weight to an agency's affidavit concerning the details of the classified status of . . . disputed record[s]." *ACLU v. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

Here, Defendant withheld information in the responsive records pursuant to Exemption 1 to protect various types of information related to intelligence sources and methods. Napier Decl. ¶¶ 14-32. Specifically, the FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security of the United States:  file numbers, the character and titles of cases, classified information provided by human intelligence sources, and classified information consisting of singular identifying numbers or code names for intelligence sources. *Id.* ¶¶ 23-30.

Defendant has determined that this information was properly classified under section 1.4(c), (d) of Executive Order 13,526. *Id.* ¶¶ 18, 23-30. The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to the declarant concerning the national defense and foreign relations of the United States. *Id.* ¶ 31. This information was not examined in isolation. *Id.* Instead, each piece of information was evaluated

with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. *Id.* Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information the declarant examined. *Id.*

Additionally, responsive material sent to the CIA for consultation contains similarly classified information related to intelligence activities, sources, and methods closely intertwined with the FBI's redactions here and its underlying investigations. *Id.* ¶ 31. As such, the CIA requested that the FBI apply Exemptions 1 and 3 on these pages and to relay, within the FBI's declaration, its assertion of these exemptions to justify their withholdings in the sample at issue in this case. *Id.* Defendant's declarant determined that any greater specificity in the descriptions and justifications set forth with respect to information relating to intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States. *Id.*

The Defendant has satisfied its burden to show that the records are properly classified under Executive Order 13,526, and that they are, therefore, properly withheld under FOIA Exemption 1. The declaration describes the records and the agency's reasons for withholding information pursuant to Exemption 1. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). The agency's explanations as to why the records are classified are both "logical" and "plausible," and uncontroverted by evidence in the record. *Larson*, 565 F.3d at 862 (internal quotation marks omitted). The Defendant has met its burden with respect to the information it withheld pursuant to Exemption 1.

## B.    Exemption 3 Withholdings

FOIA Exemption 3 exempts from disclosure records when they are:

specifically exempted from disclosure by statute ... if that statute (A)(i) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3); *Reep v. Dep't of Just.*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018), *aff'd*, No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018).  Thus, the sole issue for decision "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Morley v. CIA,* 508 F.3d 1108, 1126 (D.C. Cir. 2007).

Defendant and a consulting agency (CIA) asserted Exemption 3 to protect information regarding intelligence sources and methods pursuant to the National Security Act of 1947, § 102A(i), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, (collectively, the "National Security Act").  The D.C. Circuit repeatedly has held that the National Security Act "is a valid Exemption 3 statute." *DiBacco v. Army,* 795 F.3d 178, 183 (D.C. Cir. 2015); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).

The National Security Act provides that the Office of the Director of National Intelligence is exempt from provisions of law that require the disclosure of the "organization, functions, names, official titles, salaries, or number of personnel employed." 50 U.S.C. § 3507; *see* 50 U.S.C. § 3024(m) (incorporating by reference 50 U.S.C. § 3507, which applies to the CIA, into the National Security Act and thereby conferring the same authority on the Director of National Intelligence).  This provision of the National Security Act qualifies as a withholding statute under FOIA Exemption 3.

To fulfill its obligation of protecting intelligence sources and methods, the Director of National Intelligence is authorized to establish and implement guidelines for the Intelligence Community for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C.

§ 3024(h)(1). In implementing this authority, the Director of National Intelligence promulgated Intelligence Community Directive 700, which provides that Intelligence Community elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[4]  The FBI is one of 18 member agencies comprising the Intelligence Community, and as such must protect intelligence sources and methods. 50 U.S.C. § 3003(4). Given the plain Congressional mandate to protect the Intelligence Community's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff.  Therefore, the FBI is prohibited from disclosing such information under § 3024 (h)(1).

In this case, the FBI is asserting Exemption 3, in conjunction with the National Security Act of 1947, 50 U.S.C. § 3024 (h)(1), to protect information related to the National Foreign Intelligence Program, also known as the National Intelligence Program.  Napier Decl. ¶ 37.  As a federal agency within the Intelligence Community and a federal law enforcement agency, some of the FBI's programs and/or activities relate to the National Intelligence Program. *Id.*  In this case, the FBI protected information which shows the FBI's role in the National Intelligence Program pursuant to Exemption 3.  *Id.*[5]  Similarly, the CIA advised its assertion of Exemption 3 in the sample in this case was also for the National Security Act of 1947.  *Id.* ¶ 38.  Thus, because its assertion of Exemption 3 is closely intertwined with the FBI's redactions here and its underlying investigations, CIA requested the FBI to also relay, within the FBI's declaration, its assertion of these Exemptions 1 and 3 to justify their withholdings in the sample at issue in this case.  *Id.*

---

[4]     Intelligence Community Directive (ICD) 700, dated June 7, 2012, at ¶ E.2.a.

[5]     The FBI is asserting Exemption 3 in this case, at times in conjunction with Exemptions 1 and 7(E), to protect information that would reveal intelligence sources and methods.  *Id.* ¶ 38.

## C.    Exemption 5 Withholdings

FOIA Exemption 5, allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and inter-agency communications are between employees of different agencies or departments. *Jud. Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary).    As it pertains to the documents of the sample withheld pursuant to Exemption 5 in this case, the documents themselves have been withheld in their entirety pursuant to other FOIA Exemptions – chiefly Exemption 1 – and although no material has been released to Plaintiff, in its review the FBI determined the inter-agency and/or intra-agency character of the documents is readily apparent on their face or by the context in which they appear. Napier Decl. ¶ 41. The documents were generated and distributed in the context of internal FBI discussions or communications between the FBI and other federal agencies, as will be further demonstrated in the following paragraphs. *Id.* Applicable privileges are discussed below.

### 1.    Deliberative Process Privilege

One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *See Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).   The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).   The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)

- 10 -

(quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure"); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl'") (referencing S. Rep. No. 813, at 9 (1965)).

To properly assert the deliberative process privilege under Exemption 5, the Defendant must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Here, the Defendant has shown both. Material is "predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process. *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196

(D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

Deliberative material is "prepared to help the agency formulate its position," *Sierra Club*, 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id*. (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (documents that are part of the deliberative process make recommendations or express opinions on legal or policy matters).

Here, the FBI applied this exemption to draft documents also withheld in full pursuant to other FOIA Exemptions, chiefly Exemption 1, as the information is also classified in its entirety. Napier Decl. ¶ 43. Draft documents are inherently part of the deliberative process. *Id.* They predate final agency decisions and reflect the give and take of deliberations, through the editing process, which leads to a final, refined product. *Id.* In the instances where the FBI withheld draft material pursuant to Exemption 5, the FBI found the drafts were pre-decisional (predated the final product) due to the language used on the documents and the word "DRAFT" stamped on them. *Id.* The drafts were part of a deliberative process given the type of language used in documents surrounding the material. *Id.* Similarly, responsive material sent to DOJ-CRM for consultation contains information related to privileged deliberative materials and the Department of Justice has requested the FBI to apply this exemption on these pages and to relay, within the FBI's declaration, the Department of Justice's assertion of these exemptions to justify their withholdings. *Id.* ¶ 44.

Finally, Defendant has demonstrated that there is foreseeable harm in disclosing the information withheld pursuant to Exemption 5.  In addition to showing that specific documents qualify for protection under a named Exemption, the FOIA Improvement Act of 2016 further requires that an agency show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm*., 3 F.4th at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.  Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

The harm in releasing here would be the chilling effect on agency employees' willingness to share such drafts if they knew their unrefined ideas would be subject to public disclosure as well as the potential of less cooperation or frankness from those consulted on drafts.  Napier Decl. ¶ 43. Furthermore, there would be a risk of public confusion in that these drafts do not reflect final agency decisions.  *Id.*  Additionally, in compliance with the FOIA Improvement Act of 2016, all of this material was created less than 25 years before the submission of Plaintiff's request. *Id.*  The release of the withheld information on these draft documents is likely to chill full, frank, and open discussions between federal agency personnel involved in the investigations at issue here because, if these personnel were aware that their input provided in the form of these drafts was subject to

public scrutiny, they would be less likely to freely exchange the information needed to actively participate in such deliberations. *Id.*

For the reasons discussed above, the FBI properly applied the deliberative process privilege under Exemption 5 to withhold pre-decisional and deliberative material.

### 2. Attorney Work Product Privilege

Exemption 5 also applies to the work product doctrine, which shields materials "prepared in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, . . . or agent)." Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495 (1947); *Tax Analysts v. I.R.S.,* 117 F.3d 607, 620 (D.C. Cir. 1997). The work product doctrine protects deliberative materials but it also protects factual materials prepared in anticipation of litigation. *See, e.g., Martin v. Off. of Special Counsel,* 819 F.2d 1181, 1184-87 (D.C. Cir. 1987); *A. Michael's Piano, Inc. v. FTC,* 18 F.3d 138, 147 (2d Cir. 1994); *Tax Analysts*, 117 F.3d at 620. Rule 26(b)(3) allows discovery of materials prepared in anticipation of litigation only upon a showing of "substantial need," but in all cases "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation." *Tax Analysts*, 117 F.3d at 620, n.11. The point of the rule is that while all materials prepared in anticipation of litigation are work product and protected from discovery by other parties, a sufficient showing of need may overcome that protection with respect to factual materials, but not with respect to deliberative materials. *Id.* This does not mean that factual materials are not work product; it means only that they receive a lower degree of protection under the Rules than deliberative work product. *Id.*

The FBI relied on the attorney work product privilege to protect information and instructions related to legal defense strategy concerning third party individuals of investigative interest, as well as the actions of the United States Attorney's Office (USAO) regarding these

- 14 -

third-party individuals. Napier Decl. ¶ 47.   Although the majority of the material is withheld pursuant to other FOIA Exemptions, chiefly Exemption 1, due to the classified nature of the material, the FBI reviewed these instances of this privilege and determined that they pertained to information requested by agency counsel acting in their official capacity. *Id.* The FBI further determined these instances indicated the clear nexus to anticipation of litigation and discussion at the direction of attorneys from the USAO.  *Id.* In addition, responsive material sent to DOJ-CRM for consultation also contains information related to privileged attorney work product materials and the Department of Justice  has requested the FBI to apply this exemption on these pages and to relay, within the FBI's declaration, the Department of Justice's assertion of these exemptions to justify their withholdings.  *Id.* ¶ 48.  The same rationale discussed above applies to the Department of Justice's equities for protecting materials covered under the attorney work product privilege. *Id.*

Release of the aforementioned work product information would interfere with government attorneys' ability to properly prepare their legal theories and strategies and hinder them in providing the best possible representation of their clients.  *Id.* ¶ 49.  Finally, because the attorney work product privilege protects both factual and deliberative material, segregation is not required. *Id.*

Thus, the FBI properly withheld this information pursuant to Exemption 5.

### D.    Exemption 7 Threshold

To fall within Exemption 7, information must first meet a threshold requirement: that the records were compiled for law enforcement purposes.  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014); *Associated Press v. FBI*, 265 F. Supp. 3d 82, 98 (D.D.C. 2017).  "Agencies classified as law enforcement agencies receive a special deference in their claims of law enforcement purpose." *Pinson v. Dep't of Just.,*

313 F. Supp. 3d 88, 113 (D.D.C. 2018) (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). The D.C. Circuit has explained that an agency's investigatory records are considered law enforcement records when "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002) (quoting *Pratt*, 673 F.2d at 420, 421). Non-investigatory records "may still meet the threshold requirement if they are akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation.'" *Pinson*, 313 F. Supp. 3d at 114 (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002)).

Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Napier Decl. ¶ 50. Under this investigative authority, the responsive records were compiled in the course of the FBI's national security Counterintelligence investigations with regard to certain individuals. *Id.* Considering these records were compiled to document the FBI's investigations of potential crimes and possible threats to national security, the FBI determined they were compiled for law enforcement purposes, and therefore they comfortably fall within Exemption 7's threshold. *Id.* ¶ 51.

### E.    Exemption 6 & 7(C) Withholdings

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) (finding that because email addresses can be identified as applying to particular individuals, they qualify as "similar files" under Exemption 6).  "The Supreme Court has interpreted the term 'similar files' broadly so as 'to cover detailed Government records on an individual which can be identified as applying to that individual.'"  *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).  Indeed, "[t]he information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).[6]

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  The names of law enforcement officers who work on criminal investigations traditionally have been protected against release by Exemption 7(C).  *Davis v. Dep't*

---

[6]     Courts generally follow a two-step process when considering withholdings or redactions pursuant to Exemption 6. First, the Court determines whether the records are the type of personnel, medical, or similar files that the exemption covers. *Long v. ICE*, 279 F. Supp. 3d 226, 243 (D.D.C. 2017) (citing *Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)). Second, if the records are of the type covered by the exemption, the Court proceeds to determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 382 (1976).

*of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Similarly, like the law enforcement personnel themselves, individuals who provide information to law enforcement authorities have protectable privacy interests in their anonymity.  *Computer Prof'ls. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

In assessing the applicability of Exemptions 6 and 7(C), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46; *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (noting the balance of privacy and public interests when assessing applicability of Exemption 7(C)). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

The FBI invoked Exemptions 6 and 7(C) to protect the names and identifying information of FBI Special Agents and professional staff.  Napier Decl. ¶ 56.  These FBI Special Agents and professional staff were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents responsive to Plaintiff's FOIA request.  *Id.* These responsibilities included, but are not limited to, the following: coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, conducting interviews, and/or reporting on the status of the investigations.  *Id.*

FBI Special Agents have a privacy interest in not having their personal identifying information released to the public, where individuals involved in cases upon which they have worked can access the information. *Id.* ¶ 57. There is no public interest served by disclosing the Special Agents' identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. *Id.* Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy. *Id.* FBI professional staff have a privacy interest in not having their personal identifying information released to the public, where individuals involved in cases upon which they have worked can access the information. *Id.* ¶ 58. No public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. *Id.* Accordingly, after balancing these professional staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. *Id.*

The FBI withheld the Unique Employee Identification Numbers ("ID Numbers") of FBI Professional Staff members involved in the classification review of the records, pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). Napier Decl. ¶ 59. ID Numbers are singular numbers assigned to employees and serve as a means of identification within the government. These unique identifiers could be used to identify the employees who reviewed these documents. *Id.* This, in turn, could subject the employees to targeted attempts to obtain sensitive and/or classified FBI information to which they may have access due to their FBI employment. *Id.* The FBI determined these employees maintain substantial privacy interests in not having the ID Numbers disclosed. *Id.* ¶ 60. In contrast, there is no public interest in this singular piece of information because its

disclosure would not significantly increase the public's understanding of FBI operations and activities. *Id.*

The FBI also withheld the names and identifying information of private, commercial employees who provided assistance to the FBI and other law enforcement agencies during the course of the investigations. Napier Decl. ¶ 61. These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.*

The FBI also protected the names and identifying information of personnel from non-FBI federal government agencies who provided information to or otherwise assisted the FBI in its investigations. Napier Decl. ¶ 62. Specifically, the material contains the names of Department of the Navy (Navy) personnel. *Id.* These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.* Similarly, responsive material sent to CBP, ICE and DOJ-CRM for consultation contains information related to non-FBI federal government personnel also and these agencies have requested the FBI to apply this exemption on these pages. *Id.* ¶ 63. The same rationale discussed above applies to these federal government agencies' equities for protecting non-FBI federal government personnel. *Id.*

The FBI also withheld the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiff's request. Napier Decl. ¶ 67. These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.* ¶¶ 67-68. Similarly, responsive material sent to CBP and ICE for consultation contains information related to third-party individuals merely mentioned also and these agencies have requested the FBI

to apply this exemption on these pages and to relay, within the FBI's declaration, CBP's assertion of these exemptions to justify their withholdings. *Id.* ¶ 69. The same rationale discussed above applies to these agencies' equities for protecting third-party individuals merely mentioned. *Id.*

The FBI also withheld the names and identifying information of local law enforcement personnel who provided assistance to the FBI during its investigations. Napier Decl. ¶ 70. These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.*

The FBI also withheld the names and identifying information of third parties who were of investigative interest to the FBI. *Id.* ¶ 71. These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.* Similarly, responsive material sent to CBP and ICE for consultation contains information related to third party individuals of investigative interest also and these agencies have requested the FBI to apply this exemption on these pages and to relay, within the FBI's declaration, CBP and ICE's assertion of these exemptions to justify their withholdings. *Id.* ¶ 72. The same rationale discussed above applies to these agencies' equities for protecting third party individuals of investigative interest. *Id.*

The FBI withheld the names and identifying information of third-party individuals who were interviewed by the FBI (and subsequently provided information) during the course of the FBI's investigations of the national security matter in this case. Napier Decl. ¶ 73. These individuals have a privacy interest in their information and disclosure of their names would not significantly increase the public's understanding of FBI operations and activities. *Id.* ¶¶ 73-75.

Responsive material sent to DOD for consultation also contains information related to non-FBI federal government personnel. Napier Decl. ¶ 64. DOD cited Exemption 6 alone, with the

justification as follows: "With the exception of senior decision-makers, DOD has a practice of withholding personally identifying information of its employees—that is, those members of the DoD who are at the military rank of Colonel or below and at the rank of GS-15 or below. *See O'Keefe v. Dep't of Def.*, 463 F. Supp. 2d 317, 327 (E.D.N.Y. 2006) (holding that "the probative value of this personally identifying information is nominal and does not overcome the privacy interest of the employees involved. The employee who signed for the memorandum is a security officer within the Office of the Joint Chiefs of Staff). Although Exemption 6 "does not categorically exempt individuals' identities" from disclosure, it has been construed broadly enough to allow an agency "to exempt not just files, but also bits of personal information, such as names and addresses," provided the disclosure "would create a palpable threat to privacy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (alteration adopted) (internal quotation marks omitted); *accord Calderon v. Dep't of Agric.*, 236 F. Supp. 3d 96 (D.D.C. 2017) (explaining that the threshold for applying Exemption 6 is met if the information "applies to a particular individual" (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602(1982))). The fact that an individual is a federal employee does not change that analysis. *See, e.g., Schoenman v. FBI*, 575 F. Supp. 2d 136, 160 (D.D.C. 2008); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005). Consequently, federal employees' personal identifying information is of the type that Exemption 6 potentially allows to be withheld. *Long*, 279 F. Supp. 3d at 244. These individuals have significant privacy interests in their personal identifying information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. *Cf. Jud. Watch*, 449 F.3d at 153 (explaining that individuals have a privacy interest in the nondisclosure of their names and addresses to avoid physical danger).

The FBI and consulting agencies properly asserted Exemptions 6 and 7(C) to withhold the information discussed above.

### F.        Exemption 7(D) Withholdings

Exemption 7(D) permits the withholding of "records or information compiled for law enforcement purposes" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished" by such a source.   5 U.S.C. § 552(b)(7)(D).   "Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions."  *Billington v. Dep't of Just.*, 301 F. Supp. 2d 15, 21 (D.D.C. 2004) (citing *Voinche v. FBI*, 940 F. Supp. 323, 331 (D.D.C. 1996)).   Exemption 7(D) does not require a balancing of public and private interests.  *See*, *e.g.*, *Roth v. Dep't of Just.*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011) ("If the [agency's] production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the [agency] is entitled to withhold the records under Exemption 7(D).").

The Exemption's protections also extend to the "information furnished by a confidential source" to law enforcement authorities during a criminal investigation.  *Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 48-49 (D.D.C. 2009); *see also Parker v. Dep't of Just.*, 934 F.2d 375, 380 (D.C. Cir. 1991) ("[O]nce the agency receives information from a 'confidential source' during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.").

In determining the applicability of the exemption, "the question is . . . whether the particular source spoke with an understanding that the communication would remain confidential."  *Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993); *see also Miller v. Dep't of Just.*, 872 F. Supp. 2d 12, 26 (D.D.C. 2012) ("the focus should always be on whether the *source* of the information spoke

with the understanding of confidentiality, not whether the *document* is generally thought to be confidential") (emphasis in original). Confidentiality exists, for the purpose of Exemption 7(D), when "the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent the [agency] thought necessary for law enforcement purposes." *Miller*, 872 F. Supp. 2d at 26. If the production of criminal investigative records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by" such a source, that ends the matter, and the agency is entitled to withhold the records under Exemption 7(D). *Parker*, 934 F.2d at 380. Once an agency establishes the confidentiality of a source, the FOIA requester faces a heavy burden in overcoming the presumption that assurances were given in exchange for the information. To meet this burden, a requester must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" *Parker*, 934 F.2d at 378 (quoting *Dow Jones & Co. v. Dep't of Just.*, 908 F.2d 1006, 1011 (D.C. Cir. 1990)).

The FBI protected the names, identifying information of, and information provided by third parties to the FBI under express grants of confidentiality. Napier Decl. ¶ 79. When processing the records at issue, the FBI found evidence these individuals, who provided specific and detailed information that is singular in nature, either requested their identities not be revealed; and/or FBI investigators would have, by standard practice, expressly promised these third parties their identities and the information they provided would remain confidential. *Id.* In addition, responsive material sent to DOJ-CRM for consultation contains information related to foreign government agencies under express promises of confidentiality, and the Department of Justice has requested the FBI to apply this exemption on these pages and to relay, within the FBI's declaration, the

- 24 -

Department of Justice's assertion of this exemption to justify protected information provided from a foreign agency or authority with an explicit understanding of confidentiality.  Napier Decl. ¶ 82.

The FBI protected the permanent source symbol numbers given to FBI confidential human sources.  Napier Decl. ¶ 83.  The FBI assigns permanent source symbol numbers in sequential order to confidential human sources who report information to the FBI on a regular basis under express assurances of confidentiality.  *Id.*  In this case, the FBI did not refer to the confidential sources by their true names. *Id.*  Instead, theses sources were referred to only by their individually assigned permanent source symbol numbers, in order to further protect their identities within FBI communications.  *Id.*  The FBI obtained information from these confidential sources relevant to the investigations discussed within the records at issue.  *Id.*

The FBI protected the names, identifying information of, and information provided by third parties under circumstances in which confidentiality can be inferred. Napier Decl. ¶ 86.  These third parties provided information concerning the activities of subjects who were of investigative interest to the FBI.  *Id.* The FBI considered 1) the singularity of the information provided and the likelihood these individuals could be identified through release of this information by those familiar with the events described; 2) the proximity of these sources to the investigative subjects and events they described; and 3) and the nature of the criminal acts they described. Based on these factors, the FBI inferred that these individuals provided this information to the FBI only because they believed their cooperation with the FBI, and the information they provided (outside of its investigative use), would remain confidential.  *Id.*  Specifically, the FBI protected the identifying information of, and information provided by, individuals who conveyed critical information regarding potential criminal acts.  *Id.* ¶¶ 87-88.  Considering the circumstances described above,

it is reasonable to infer these third parties cooperated with the FBI only because they expected their identities and the information they provided would be held in confidence. *Id.* ¶ 89.

The FBI properly protected the sources' identities and the information they provided pursuant to Exemption 7(D).

### G.      Exemption 7(E) Withholdings

#### 1.      Legal Standard

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

## 2.   Information Withheld

The FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes.  Napier Decl. ¶ 93.   These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law.  *Id.* ¶¶ 93-94.

The FBI withheld non-public details about investigation code names used by the FBI and described in the records responsive to Plaintiff' request.  Napier Decl. ¶ 95.   These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law.  *Id.*

The FBI protected sensitive investigative techniques used to conduct national security investigations, in conjunction with FOIA Exemptions 1, Executive Order 13526, § 1.4(b), (c) and 50 U.S.C. § 3024(h)(1).  Napier Decl. ¶ 96.  Due to the nature of these techniques, they qualify for protection pursuant to FOIA Exemption 7(E) as they are non-public law enforcement techniques, the release of which would enable criminals to circumvent the law; but they also qualify for protection pursuant to Exemptions 1 and/or 3 as they are also intelligence gathering sources and methods used in a national security context. *Id.*  These investigative techniques are highly sensitive and releasing additional information about them or discussing them in greater detail here would reveal their very nature, and when and how they are utilized by the FBI in criminal and national security investigations. *Id.* This would enable criminals and foreign adversaries targeted by these techniques to predict and circumvent their use by the FBI. *Id.* As such, the FBI asserted Exemption 7(E), in conjunction with Exemptions 1 and 3, to protect these sensitive national security investigative techniques.

The FBI protected methods and techniques involving the location and identity of FBI units, squads and divisions involved in the national security investigations.  Napier Decl. ¶ 97.  These

- 27 -

are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 97-99.

The FBI withheld information pertaining to the types and dates of investigations referenced in the records at issue in this case. Napier Decl. ¶ 100. Specifically, some of the information withheld, when referenced in connection with actual investigation and not in general discussion, pertains to the type of investigation, whether it is a "preliminary" or "full" investigation and the dates the FBI initiated the investigations. *Id.* These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 100-103.

The FBI protected the focuses of specific FBI national security investigations. Napier Decl. ¶ 104. These focuses have not been publicly disclosed. *Id.* These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 104-06.

The FBI and at times as requested by CBP and ICE protected database search results located through non-public databases used for official law enforcement purposes by the FBI and other federal, state and local law enforcement personnel. Napier Decl. ¶ 107. These non-public databases serve as repositories for counterterrorism and investigative data. *Id.* They are essentially "one-stop" shops that allow law enforcement to query information and develop investigative leads from a variety of data sources using state-of-the-art analytical tools. *Id.* U.S. Government personnel as well as task force members from local, state and other federal agencies may have access to these databases on a need-to-know basis. *Id.* Similarly, at times when the FBI determines a database is sensitive enough to warrant protection under the FOIA, it does not divulge the name of that database as that would undermine the very reasoning for withholding the name and/or

search results from that database. *Id.* These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 107-08.

The FBI protected procedures and techniques used by FBI investigators to conduct polygraph examinations, to include detailed non-public information about the use of operational polygraphs. Napier Decl. ¶ 109. While the FBI's use of polygraph examinations is publicly known, the details of the FBI's methodology for conducting polygraphs is highly guarded information. *Id.* These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 109-11.

The FBI withheld monetary amounts requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques. Napier Decl. ¶ 112. These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 112-13.

The FBI withheld information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations conducted by the FBI in relation to the investigations at issue here. Napier Decl. ¶ 114. These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 114-15.

The FBI withheld secure fax numbers, non-public intranet web addresses, and telephone numbers. Napier Decl. ¶ 116. These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.*

The FBI protected reports and/or data resulting from the FBI's analysis of digital media collected during the investigations memorialized in the records at issue. Napier Decl. ¶ 117. Computer Analysis Response Team ("CART") examiners are experts at extracting data from digital media. *Id.* ¶ 118. Providing detailed information about CART software, equipment,

techniques, procedures, and/or types of reports generated by CART during their forensic testing processes would impede the FBI's effectiveness in investigating crimes where evidence can be found on computers and other digital media. *Id.* It would also aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior in order to avoid detection. *Id.*

The FBI protected operational directives that not only describe non-public FBI investigative procedures, techniques, and strategies, but also instruct FBI employees on the proper use of these procedures, techniques, and strategies. Napier Decl. ¶ 119. These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.*

The FBI protected details of FBI Operational Plans. Napier Decl. ¶ 120. These Operational plans are developed for the purpose of successfully executing arrests or other dangerous investigative actions. *Id.* These plans often include strategies for surveillance, placement of personnel, communications during the operations, contingency/abort plans, administrative and equipment information, deadly force authorization information, targets' background information (maps, photographs, copies of warrants, indictments, etc.), local emergency medical facility information and routes, briefing/staging locations, and/or other specific instructions for the operations. *Id.* These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 120-21.

The information discussed above was properly withheld pursuant to Exemption 7(E).

## II. DEFENDANT PROPERLY CONCLUDED THAT THERE ARE NO REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information.

5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data,* 566 F.2d at 260.  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008); *Rudometkin v. United States*, 140 F.4th 480, 494 (D.C. Cir. 2025) (requiring the government to attest that it reviewed the exempt portions of the documents to assess "whether any information could be segregated and released without causing a foreseeable harm to the agency.") (citing *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The FBI identified 2,537 responsive pages of the sample and additional context pages in this matter.  Sixty-five pages were released in full.  Napier Decl. ¶ 133.  Following the segregability review, the FBI determined that 902 pages could be released in part with redactions per the identified FOIA exemptions herein. *Id.* These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.  *Id.*  Following the segregability review, the FBI determined that 1,570 pages were required to be withheld in their entirety.  *Id.*  Of these, 83 pages were withheld in their entirety because they were duplicative of other pages, and 1,487 pages were withheld in their entirety because the FBI determined that all information on these pages was fully covered by FOIA Exemptions by either the FBI or consulting agencies.  *Id.*  The FBI determined that any non-exempt information on these pages was so

intertwined with exempt material, that no information could be reasonably segregated for release. *Id.* Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. *Id.*; *see also id.* ¶¶ 10, 11, 17, 45, 134.

*   *   *

## CONCLUSION

For all the reasons set forth above and in the supporting materials submitted herewith, Defendant respectfully asks the Court to grant summary judgment as to Count VI of Plaintiff's complaint.

Dated: April 16, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ Sian Jones*_____
SIAN JONES, D.C. Bar # 1024062
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2578

*Attorneys for the United States of America*

- 33 -