UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFERY STEIN, | |
| Plaintiff, | |
| v. | Civil Action No. 13-0571 (TSC) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**DEFENDANT'S STATEMENT OF**
**MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendant the Department of Justice ("Department"), submits the following statement of material facts as to which there is no genuine issue in support of Defendant's renewed motion for summary judgment as to the Count VI brought by Plaintiff Jeffery Stein. ("Plaintiff") against the Department under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1]

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 1. By FOIA request dated May 29, 2012, Plaintiff's counsel submitted a FOIA request to the Federal Bureau of | |

---

[1]  Defendant respectfully submits herewith the Declaration of Amie Marie Napier ("Napier Decl."). The Napier Declaration is the twelfth overall in this case and incorporates and supplements the prior eleven declarations. See ECF No. 14-1 ("First Hardy Decl."); ECF No. 22-1 ("Second Hardy Decl."); ECF No. 27-1 ("Third Hardy Decl."); ECF No. 29-1 ("Fourth Hardy Decl."); ECF No. 40-2 ("Fifth Hardy Decl."); ECF No. 47-1 ("Sixth Hardy Decl."); ECF No. 50-2 ("Seventh Hardy Decl."); ECF No. 70-1 ("Eighth Hardy Decl."); ECF No. 109-1 ("Ninth Hardy Decl."); ECF No. 122-1, ("First Seidel Decl."); and ECF No. 141-1, ("Second Seidel Decl.").

| Defendant's Statement | Plaintiff's Response |
|---|---|
| Investigation ("FBI") seeking records concerning Gwenyth Todd. *See* Fourth Hardy Decl. (ECF No. 29-1) ¶ 14; Ex. G (ECF No. 29-1 at 76). | |
| 2. Plaintiff provided a signed privacy waiver form from Ms. Todd, authorizing the FBI to release information about her to both Plaintiff and his counsel, and requested a fee waiver (and specifically noted that his client was unwilling to pay any fees associated with his request). *See* Fourth Hardy Decl. (ECF No. 29-1) ¶ 14; Ex. G (ECF No. 29-1 at 76). | |
| 3. The FBI processed 7,004 pages of records responsive to Plaintiff's request concerning Gwenyth Todd (Count 6 of the Complaint). Napier Decl. ¶ 5. | |
| 4. In an effort to resolve this matter, Plaintiff provided the FBI seven | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| criteria for the FBI to research. The FBI performed the requested research and is now briefing only a sample of responsive material for Count 6. The sample consists of 2,537 pages of records that met the criteria from Plaintiff as well as context pages provided by the FBI in its October 5, 2018 supplemental release. Napier Decl. ¶ 5. | |
| 5. Plaintiff conceded the FBI's withholdings of File Numbers and Federal Grand Jury Information. Napier Decl. ¶ 5. | |
| 6. Of the 2,537 total pages (from the sample and the context pages), 65 pages were released in full (RIF), 902 pages were released in part (RIP), and 1,570 pages were withheld in full (WIF) based on FOIA exemptions. Napier Decl. ¶¶ 6, 133. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 7. The FBI consulted with the Department of the Army (Army), United States Customs and Border Protection (CBP), Central Intelligence Agency (CIA), Department of Defense (DOD),[2] Department of Justice Criminal Division (DOJ-CRM), Department of State (DOS), United States Immigrations and Customs Enforcement (ICE), Department of the Navy (Navy), and the United States Department of the Treasury (Treasury) - throughout the processing of this case. Napier Decl. ¶ 6. | |
| 8. The FBI withheld classified information regarding human intelligence sources contained in the records based on the standards articulated in the FOIA statute, 5 | |

---

[2]     The Department of Defense was renamed the Department of War on September 5, 2025. As such, documents identifying DOD equities in this case now fall under the Department of War.

| Defendant's Statement | Plaintiff's Response |
|---|---|
| U.S.C. § 552(b)(1).  Napier Decl. ¶¶ 14-32. | |
| 9. Specifically, the FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security of the United States:  file numbers, the character and titles of cases, classified information provided by human intelligence sources, and classified information consisting of singular identifying numbers or code names for intelligence sources.  Id. ¶¶ 23-30. | |
| 10. Defendant has determined that this information was properly classified under section 1.4(c), (d) of Executive Order 13,526. *Id.* ¶¶ 18, 23-30. | |
| 11. Additionally, responsive material sent to the CIA for consultation contains | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| similarly classified information related to intelligence activities, sources, and methods closely intertwined with the FBI's redactions here and its underlying investigations. *Id.* ¶ 31. | |
| 12. The FBI and CIA asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 (NSA), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA).  Napier Decl. ¶¶ 33-38. | |
| 13. The FBI asserted Exemption 3, in conjunction with the National Security Act of 1947, 50 U.S.C. § 3024 (h)(1), to protect information related to the National Foreign Intelligence Program, also known as the National Intelligence Program.  Napier Decl. ¶ 37. | |
| 14. As a federal agency within the Intelligence Community and a federal | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| law enforcement agency, some of the FBI's programs and/or activities relate to the National Intelligence Program. Napier Decl. ¶ 37.  In this case, the FBI protected information which shows the FBI's role in the National Intelligence Program pursuant to Exemption 3. *Id.* | |
| 15. The CIA advised its assertion of Exemption 3 in the sample in this case was also for the National Security Act of 1947.  Napier Decl. ¶ 38.  Thus, because its assertion of Exemption 3 is closely intertwined with the FBI's redactions here and its underlying investigations, CIA requested the FBI to also relay, within the FBI's declaration, its assertion of these Exemptions 1 and 3 to justify their withholdings in the sample at issue in this case. *Id.* | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 16. The FBI protected privileged deliberative materials within the sample of processed pages in this case pursuant to Exemption 5. Napier Decl. ¶¶ 39-45. | |
| 17. In the instances where the FBI withheld draft material pursuant to Exemption 5, the FBI found the drafts were pre-decisional (predated the final product) due to the language used on the documents and the word "DRAFT" stamped on them. Napier Decl. ¶ 43. | |
| 18. The drafts were part of a deliberative process given the type of language used in documents surrounding the material. Napier Decl. ¶ 43. | |
| 19. Responsive material sent to DOJ-CRM for consultation contains information related to privileged deliberative materials and the Department of Justice has requested the FBI to apply this | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| exemption on these pages and to relay, within the FBI's declaration, the Department of Justice's assertion of these exemptions to justify their withholdings.  Napier Decl. ¶ 44. | |
| 20. The harm in releasing here would be the chilling effect on agency employees' willingness to share such drafts if they knew their unrefined ideas would be subject to public disclosure as well as the potential of less cooperation or frankness from those consulted on drafts.  Napier Decl. ¶ 43. | |
| 21. There would also be a risk of public confusion in that these drafts do not reflect final agency decisions.  *Id.* | |
| 22. Additionally, in compliance with the FOIA Improvement Act of 2016, all of this material was created less than 25 years before the submission of | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| Plaintiff's request. *Id.* The release of the withheld information on these draft documents is likely to chill full, frank, and open discussions between federal agency personnel involved in the investigations at issue here because, if these personnel were aware that their input provided in the form of these drafts was subject to public scrutiny, they would be less likely to freely exchange the information needed to actively participate in such deliberations. *Id.* | |
| 23. The FBI protected privileged attorney work products pursuant to Exemption 5. Napier Decl. ¶¶ 39-41, 46-49. | |
| 24. The FBI relied on the attorney work product privilege to protect information and instructions related to legal defense strategy concerning third party individuals of investigative | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| interest, as well as the actions of the United States Attorney's Office (USAO) regarding these third-party individuals. Napier Decl. ¶ 47. | |
| 25. The FBI reviewed these instances of this privilege and determined that they pertained to information requested by agency counsel acting in their official capacity. *Id.* | |
| 26. The FBI further determined these instances indicated the clear nexus to anticipation of litigation and discussion at the direction of attorneys from the USAO. *Id.* | |
| 27. In addition, responsive material sent to DOJ-CRM for consultation also contains information related to privileged attorney work product materials and the Department of Justice has requested the FBI to apply this exemption on these pages and to relay, | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| within the FBI's declaration, the Department of Justice's assertion of these exemptions to justify their withholdings. *Id.* ¶ 48. These instances indicated the clear nexus to anticipation of litigation and discussion at the direction of attorneys from the USAO. *Id.* | |
| 28. Release of the aforementioned work product information would interfere with government attorneys' ability to properly prepare their legal theories and strategies and hinder them in providing the best possible representation of their clients. *Id.* ¶ 49. | |
| 29. Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Napier Decl. ¶ 50. | |
| 30. Under this investigative authority, the responsive records were compiled in the course of the FBI's national security Counterintelligence (CI) investigations with regard to certain individuals.  Napier Decl. ¶ 50. | |
| 31. Considering these records were compiled to document the FBI's investigations of potential crimes and possible threats to national security, | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| they were compiled for law enforcement purposes, and therefore they comfortably fall within Exemption 7's threshold. *Id.* ¶ 51. | |
| 32. FBI Special Agents and professional staff who were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents responsive to Plaintiff's FOIA request have a privacy interest in not having their personal identifying information released to the public, where individuals involved in cases upon which they have worked can access the information. *Id.* ¶¶ 57-58. | |
| 33. The FBI Professional Staff members involved in the classification review of the records have a privacy interest in their ID numbers. Napier Decl. ¶ 59. | |
| 34. Private, commercial employees who provided assistance to the FBI and | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| other law enforcement agencies during the course of the investigations have a privacy interest in their the names and identifying information.  Napier Decl. ¶ 61. | |
| 35. Personnel from non-FBI federal government agencies who provided information to or otherwise assisted the FBI in its investigations have a privacy interest in names and identifying information.  Napier Decl. ¶¶ 62-63. | |
| 36. Third parties who were merely mentioned in the investigative records responsive to Plaintiff's request have a privacy interest in their names and identifying information.  Napier Decl. ¶¶ 67-69. | |
| 37. Local law enforcement personnel who provided assistance to the FBI during its investigations have a privacy interest in their names and identifying information.  Napier Decl. ¶ 70. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 38. Third parties who were of investigative interest to the FBI have a privacy interest in their names and identifying information.  Napier Decl. ¶¶ 71-72. | |
| 39. Third-party individuals who were interviewed by the FBI (and subsequently provided information) during the course of the FBI's investigations of the national security matter in this case have a privacy interest in their names and identifying information.  Napier Decl. ¶¶ 73-75. | |
| 40. Disclosure of the personal identifying information of these individuals would not significantly increase the public's understanding of FBI operations and activities.  Napier Decl. ¶¶ 56-75. | |
| 41. The FBI protected the names, identifying information of, and information provided by third parties to the FBI under express grants of confidentiality.  Napier Decl. ¶ 79. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| When processing the records at issue, the FBI found evidence these individuals, who provided specific and detailed information that is singular in nature, either requested their identities not be revealed; and/or FBI investigators would have, by standard practice, expressly promised these third parties their identities and the information they provided would remain confidential. *Id.* | |
| 42. Responsive material sent to DOJ-CRM for consultation contains information related to foreign government agencies under express promises of confidentiality, and the Department of Justice has requested the FBI to apply this exemption on these pages and to relay, within the FBI's declaration, the Department of Justice's assertion of this exemption to justify protected information provided from a foreign | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| agency or authority with an explicit understanding of confidentiality. Napier Decl. ¶ 82. | |
| 43. The FBI protected the identifying information of, and information provided by, individuals who conveyed critical information regarding potential criminal acts.  Napier Decl.  ¶¶ 87-88. | |
| 44. The FBI reasonably inferred these third parties cooperated with the FBI only because they expected their identities and the information they provided would be held in confidence. *Id.* ¶ 89. | |
| 45. The FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes. Napier Decl. ¶ 93. | |
| 46. These methods are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law.  *Id.* ¶¶ 93-94. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 47. The FBI protected sensitive investigative techniques used to conduct national security investigations, in conjunction with FOIA Exemptions 1, Executive Order 13526, § 1.4(b), (c) and 50 U.S.C. § 3024(h)(1). Napier Decl. ¶ 96. | |
| 48. Due to the nature of these sensitive investigative techniques, they qualify for protection pursuant to FOIA Exemption 7(E) as they are non-public law enforcement techniques, the release of which would enable criminals to circumvent the law. Napier Decl. ¶ 96. | |
| 49. The FBI protected methods and techniques involving the location and identity of FBI units, squads and divisions involved in the national security investigations. Napier Decl. ¶ 97. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 50. These methods are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 97-99. | |
| 51. The FBI withheld information pertaining to the types and dates of investigations referenced in the records at issue in this case. Napier Decl. ¶ 100. | |
| 52. In context, these types and dates are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 100-103. | |
| 53. The FBI protected the previously undisclosed focuses of specific FBI national security investigations. Napier Decl. ¶ 104. | |
| 54. These focuses are law enforcement techniques and procedures, the disclosure of which would enable | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| individuals to circumvent the law. *Id.* ¶¶ 104-06. | |
| 55. The FBI withheld database search results from non-public databases. Napier Decl. ¶ 107. | |
| 56. These database results are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 107-08. | |
| 57. The FBI protected procedures and techniques used by FBI investigators to conduct polygraph examinations, to include detailed non-public information about the use of operational polygraphs. Napier Decl. ¶ 109. | |
| 58. These are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 109-11. | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 59. The FBI withheld monetary amounts requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques. Napier Decl. ¶ 112. | |
| 60. These monetary amounts are law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* ¶¶ 112-13. | |
| 61. The FBI withheld information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations conducted by the FBI in relation to the investigations at issue here. Napier Decl. ¶ 114. | |
| 62. This surveillance operation information constitutes law enforcement techniques and procedures, the disclosure of which | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| would enable individuals to circumvent the law. *Id.* ¶¶ 114-15. | |
| 63. The FBI withheld secure fax numbers, non-public intranet web addresses, and telephone numbers. Napier Decl. ¶ 116. | |
| 64. This information constitutes law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* | |
| 65. The FBI protected reports and/or data resulting from the FBI's analysis of digital media collected during the investigations memorialized in the records at issue. Napier Decl. ¶¶ 117-18. | |
| 66. These reports and data constitute law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| 67. The FBI protected operational directives that not only describe non-public FBI investigative procedures, techniques, and strategies, but also instruct FBI employees on the proper use of these procedures, techniques, and strategies. Napier Decl. ¶ 119. | |
| 68. These directives constitute law enforcement techniques and procedures, the disclosure of which would enable individuals to circumvent the law. *Id.* | |
| 69. The FBI protected details of FBI Operational Plans, which are developed for the purpose of successfully executing arrests or other dangerous investigative actions. Napier Decl. ¶ 120. | |
| 70. These directives constitute law enforcement techniques and procedures, the disclosure of which | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| would enable individuals to circumvent the law. *Id.* ¶¶ 120-21. | |
| 71. Following the segregability review, the FBI determined that 902 pages of the 2,537 responsive pages in the sample could be released in part with redactions per the identified FOIA exemptions herein. Napier Decl. ¶ 133. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages. *Id.* | |
| 72. Following the segregability review, the FBI determined that 1,570 pages of the 2,537 responsive pages in the sample were required to be withheld in their entirety. Napier Decl. ¶ 133. Of these, 83 pages were withheld in their entirety because they were duplicative of other | |

| Defendant's Statement | Plaintiff's Response |
|---|---|
| pages, and 1,487 pages were withheld in their entirety because the FBI determined that all information on these pages was fully covered by FOIA Exemptions by either the FBI or consulting agencies. *Id.* The FBI determined that any non-exempt information on these pages was so intertwined with exempt material, that no information could be reasonably segregated for release. *Id.* | |
| 73. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Napier Decl. ¶ 133; *see also id.* ¶¶ 10, 11, 17, 45, 134. | |

\* \* \*

Dated: June 1, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:         /s/  *Sian Jones*
    SIAN JONES, D.C. Bar # 1024062
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    Phone: (202) 252-2578
    Email: Sian.Jones@usdoj.gov

*Attorneys for the United States of America*

- 27 -